| 86    461|
|204   1537

## WILBUR F. STOREY
### *v.*
### ALICE A. EARLY.

1. LIBEL — *evidence in mitigation under general issue.* In an action for libel or slander, when the defendant does not justify, he may mitigate damages in two ways only — by showing the general bad character of the plaintiff, and by showing any circumstances which tend to disprove malice, but do not tend to prove the truth of the charge. This qualification excludes, not only such circumstances as the law recognizes as competent evidence tending to prove the truth of the charge, but all circumstances which, in the popular mind, tend to cast suspicion of guilt upon the plaintiff.

2. In an action for libel against the publisher of a newspaper for publishing a libelous article, the defendant may show under the general issue, in mitigation of damages, certain forged letters, purporting to have been written by reputable citizens to the defendant, charging the plaintiff in substance as in the libelous article, whereby the defendant was imposed upon and induced to publish the article.

3. DAMAGES — *depending on defendant's wealth — proper elements of.* In an action against the publisher of a journal for publishing a libelous article, of which the publisher is not the author, in fixing the amount of damages to be awarded as *compensation* to the plaintiff for the injury received, the jury have no right to consider the wealth and standing of the defendant. The extent of the circulation of the newspaper, and its character and standing for fairness, justice, and truth, it seems, may be considered on such question. BREESE, J.

APPEAL from the Superior Court of Cook County; the Hon. JOSIAH McROBERTS, Judge, presiding.

This was an action instituted in the court below by Alice A. Early against Wilbur F. Storey, to recover damages for the publication of a libel in the newspaper known as *The Chicago Times*, of which the defendant was the proprietor. The facts upon which the questions involved depend are sufficiently set forth in the opinion of the court.

Messrs. GOUDY, CHANDLER & SKINNER, for the appellant.

Mr. E. A. SMALL and Mr. SIDNEY SMITH, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

In the case of *Regnier* v. *Cabot*, 2 Gilm. 38, this court, apparently with great care, laid down as a rule of law, in actions of this kind, "that where a defendant does not justify, he may mitigate damages in two ways only: first, by showing the general bad character of the plaintiff; and, second, by showing any circumstances which tend to disprove malice, but do not tend to prove the truth of the charge." Before that time it had been a question whether, under the general issue, the defendant could be permitted to show specific facts which tend to cast suspicion of guilt upon the plaintiff, upon which (it is there said) there had been a conflict of authority. The authorities in other States and in England were in that case examined, and the rule with its qualifications was laid down as stated above.

In an earlier case (*Young* v. *Bennett*, 4 Scam. 46) it had been decided, where defendant pleaded the general issue to the whole declaration and justified as to part of the counts, that it is not competent to prove, in mitigation of damages, "that a particular rumor prevailed in the neighborhood that plaintiff was guilty of the charge."

In *Sheahan* v. *Collins*, 20 Ill. 328, the rule laid down in Cabot's case, *supra*, was again laid down and applied. That action was for libel, and it was there held incompetent to show that the libelous article had appeared in another

newspaper in the city shortly before its publication by the defendants.

The qualification to the proposition, that defendant in such case "may prove any circumstances which tend to rebut malice," is that, if such circumstances tend to prove the truth of the charge expressed in the slander or libel, the proof must be rejected.

This qualification excludes, not only such circumstances as the law recognizes as *competent* evidence tending to prove the truth of the charge, but all circumstances which in the popular mind tend to cast suspicion of guilt upon the plaintiff.

There can be no question that the proof offered in the case at bar, and hereinafter mentioned, tends to rebut the inference of actual malice in the defendant. The turpitude of the publication of matter believed to be true is plainly of a character much less malignant than that of the publication of the same matter when known to be false, and less than the publication of the same matter without *any* reason to suppose it to be true. The proof offered, plainly, did tend in some degree to rebut malice. It tended to reduce the offense of defendant from that of vindictive and virulent malice, or that of utter recklessness, to that of a want of proper care in ascertaining the truth before publication. It was, therefore, competent unless it be excluded by the qualification to the rule.

The question in this case is, did the proof so offered tend to cast suspicion of guilt upon the plaintiff? If so, it was properly rejected by the circuit court; if not, it ought to have been admitted.

The substance of what defendant offered to show to the jury was that plaintiff was a worthy and estimable young woman living in Rockford, Illinois, and that two letters purporting to be written by two reputable citizens of Rockford were forged by some unknown person, and sent through the postoffice to defendant in Chicago, and that defendant was thereby imposed upon and induced to publish the libelous

article, at the time supposing the charge to be true, and that no one in Rockford had ever heard a suspicion of the purity of plaintiff until the publication of defendant, and that the publication excited universal indignation. Does this statement tend in the slightest degree to excite in the minds of the jury, the bystanders, or the public a suspicion of the probability of guilt on the part of plaintiff? We think not. On the contrary, it furnishes a vindication of her purity more complete than could any verdict of a jury saying, merely, " She is innocent, and the publication was malicious."

The proof here offered differs from the case of an attempt merely to prove that rumors in support of the charge were in circulation before the publication, and from the case where it was proposed merely to prove that a like charge had been published in another journal. Proof that prior rumors existed, or that a prior publication of the charge had been made in another journal, would tend to excite in the minds of the jury a suspicion against the purity of plaintiff, and would tend to cast additional reproach upon the plaintiff.

That would be simply a repetition of the slander, with no accompanying antidote to neutralize the virus. In fact, a statement by a defendant that rumors were prevalent against the chastity of a woman, or that an article charging such impurity upon her had been published in a public journal, would constitute of themselves ground for another action. Not so with the statement offered to be proved in this case. The publication of the statement offered in proof could not be made the subject of action by the plaintiff, for it in no way suggests to the mind a suspicion of impurity in her.

In many cases the application of this rule of exclusion may be difficult. It may not be easy at all times to distinguish between that which is free from the suggestion of guilt in plaintiff, and that which is not.

The propriety of this exclusion of some matters, though

they may seem to rebut malice, seems to rest upon the idea that while the law will allow a guilty defendant to mitigate, if he can, the degree of his guilt, this is a privilege which must not be exercised if to do so involves the necessity of casting reproach upon an innocent plaintiff, who has done no wrong. The proof on this point offered in this case, taken as a whole, tended in no degree to cast additional reproach upon the plaintiff, and ought to have been admitted.

The sixth instruction for plaintiff was improperly given ; it in substance says to the jury that, in fixing the amount of damages to be awarded as *compensation* to plaintiff for the injury she has sustained, "the wealth and standing of the defendant" might properly be considered.

It is not perceived how the injury actually done to plaintiff by the publication of this libel could be affected either by the wealth or standing of Wilbur F. Storey.

This is not a slander uttered personally by the defendant, nor is the libelous matter contained in any communication having the sanction of his name. The extent of the circulation of the newspaper of defendant, and the character and standing of that newspaper for fairness, justice, and truth, might well be considered upon that question. The wealth of the publisher might be great and his social standing high, and yet the paper might be of such character as to exert but little influence upon the public mind. On the other hand, the publisher might be insolvent, and his position in society very low, and yet the paper might be very attractive and have a very large circulation, and enjoy the confidence of the public to such a degree, for justice and truth, that statements in its columns might carry great weight.

There is a clear distinction between a publication of slanderous matter in a newspaper as a matter of news, and the publication of slanderous matter upon the personal truthfulness and responsibility of the defendant.

Again, the injury actually suffered in no sense is to be

measured by the wealth of defendant. It must be observed that this instruction does not relate to *vindictive* or *punitive* damages, but solely to compensatory damages.

For the errors stated the judgment must be reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE WALKER: I concur in this opinion, so far as it holds that the forged letters should have been admitted in evidence, in mitigation of damages, but not as to what is said in regard to the instruction.

Mr. JUSTICE CRAIG dissenting.

Mr. JUSTICE SCOTT: The libel published in defendant's newspaper was a great wrong to the character of plaintiff. Its publication can not be justified or palliated for any reason or for any cause. It was not legitimate news fit for publication, and if defendant wished to permit the scandalous matter to appear in the columns of his paper, he ought, in justice to the parties accused, to have first ascertained whether it was true or false, which he could have done in a few hours by the use of the telegraph. Not to do so shows a reckless disregard of the rights and feelings of innocent parties that might be affected by the publication of such defamatory matter.

That part of the opinion by Mr. Justice BREESE which condemns an instruction given for plaintiff is not concurred in by any four members of the court, and hence the views expressed have no sanction from the court. The only cause for reversing the judgment, which has the sanction of a majority of the court, is that the court below erred in excluding from the jury certain letters received by defendant, which it is said contain the substance of the libelous publication. The fact such letters were received was proven, and that the article published was based on them was also proven, and that was all defendant was entitled to prove in that connection. No other legitimate use could be made of

the letters, and indeed the rulings of the court in that respect were quite favorable to defendant.

It must be conceded that, under the former decisions of this court, if the signatures to the letters were genuine, or there had been no signature at all to them, such letters would not have been admissible in evidence. If they would tend to prove anything, it would be the truth of the libel, and that is not allowable under the plea of not guilty. How the fact the signatures to the letters may be forgeries can change the rule of law on this subject is to me inexplicable. The introduction and reading of such letters, had the court permitted it, to the jury in the presence of the court, would have been simply a repetition of the libel. Conceding the signatures to the letters were forgeries, the contents were nevertheless libelous and defamatory in the highest degree.

Believing there is no error in the record, the judgment ought to be affirmed.

Mr. Justice Sheldon concurs with Mr. Justice Scott.