## Eviston vs. Cramer and others.

· 47   659·
103   396
103   397

**Libel.** *(1) What words* prima facie *libelous.* *(2) Pleading.*

1. A publication which charges that a person, while formerly holding the office of sealer of weights and measures and inspector of scales for a certain city, "tampered with" or "doctored" such weights, measures and scales, for the purpose of increasing the fees of his office, is *prima facie* libelous, as tending to bring the accused into public hatred or contempt.

2. On demurrer to a complaint in libel which alleges that defendant made such charges against plaintiff "falsely, wickedly and maliciously," the question whether the publication was *privileged* does not arise; as privilege does not extend to false charges made with improper motives or express malice.

APPEAL from the County Court of *Milwaukee* County.

Action for libel. The newspaper article upon which the action was based, and which is set out in the complaint with matter of inducement, innuendoes, etc., is of considerable length, and will be omitted here, as its general purport is sufficiently stated in the opinion. Defendants demurred to the complaint as not stating a cause of action, and appealed from an order overruling their demurrer.

*J. J. Orton*, for the appellants.

For the respondent, the cause was submitted on the brief of *Cottrill, Cary & Hanson*.

COLE, J. In support of the demurrer it is insisted that the publication set out in the complaint is not upon its face libelous. In that view we are unable to concur. It seems to us that the obvious tendency of the publication was to disparage the character of the plaintiff and bring him into public ridicule and contempt. Undoubtedly the whole article should be considered together, in order to determine its character. If we so consider it, it charges or states, in substance, that the plaintiff, while acting as the official sealer of weights and measures, and as inspector of scales in and for the city of Milwaukee, made a practice of "tampering" with such weights and scales, for the purpose of increasing the fees of his office. This is the meaning or sense which a person would naturally attach to the language used in the article upon reading it. There are particular instances given of what is called in the article "tampering with" or "doctoring" the weights and scales of individuals by the plaintiff, while in office, for the purpose of increasing his fees.

Now, that such statements are *prima facie* prejudicial to plaintiff, calculated to degrade him in public estimation and bring him into public hatred and contempt, seems too plain for discussion. Nor are the injurious consequences of the publication neutralized or destroyed because the charges were

made against the plaintiff after the expiration of his term of office, as "ex-sealer of weights and measures;" for surely to charge a man who has held an office that he performed the duties of such office from corrupt and dishonest motives, in order to obtain unlawful fees, necessarily tends to expose him to the scorn and contempt of every right-thinking person.

But it is further insisted in support of the demurrer, that the publication in question is privileged; that it was but a fair criticism by a public journal upon the conduct of a man while holding a public office; and that this was a matter of such public interest and concern as rendered the communication not actionable. Freedom of the press or exemption from censorship — the right to freely comment upon the character and official conduct of men holding public office, — is a most valuable right, and one without which popular governments cannot be maintained.

Says Judge Cooley upon this subject: "The freedom of the press was undoubtedly intended to be secured on public grounds, and the general purpose may be said to be to preclude those in authority from making use of the machinery of the law to prevent full discussion of political and other matters in which the public are concerned. With this end in view, not only must freedom of discussion be permitted, but there must be exemption afterwards from liability for any publication made in good faith, and in the belief in its truth, the making of which, if true, would be justified by the occasion. There should consequently be freedom in discussing, in good faith, the character, the habits, and mental and moral qualifications, of any person presenting himself, or presented by his friends, as a candidate for a public office, either to the electors or to a board or officers having powers of appointment. The same freedom of discussion should be allowed when the character and official conduct of one holding a public office is in question, and in all cases where the matter discussed is one of general public interest." Cooley on Torts, pp. 217, 218.

In this case we are not called upon to determine how far a public journal may go in criticising or commenting on the official conduct and motives of men in office, inasmuch as the question whether the publication was privileged cannot arise on the demurrer; for it is alleged in the complaint, and for the purposes of this appeal must be assumed as true, that the defendants falsely, wickedly and maliciously published the article in question. Now we do not understand that privilege can be predicated upon a communication published with improper motives, or with express malice. Proof of express malice in the publication of any written communication renders such communication libelous in its character. Folkard's Starkie on Slander and Libel, ch. 11; *White v. Nicholls*, 3 Howard, U. S., 266; *Klinck v. Colby*, 46 N. Y., 427; *Noonan v. Orton*, 32 Wis., 106; *Cottrill v. Cramer*, 43 Wis., 242.

It follows from these views that the order of the county court must be affirmed.

*By the Court.* — Ordered affirmed.