| 21 | 431 |
| 29 | 293 |
| 29 | 379 |
| 21 | 431 |
| 38 | 246 |
| 39 | 331 |
| 21 | 431 |
| 52 | 157 |

JONES, VARNUM & CO., APPELLANTS, VS. TOWNSEND'S ADMINISTRATRIX, APPELLEE.

1. Under section 3324 of the Revised Statutes of the United States, the failure to efface and obliterate the internal revenue stamps on a cask at the time of emptying the same of distilled spirits is a felony, punishable by fine and imprisonment. Intent to transport the empty cask with the stamp on it, or to procure it to be transported, is not an element of the above offence.

2. To publish in a newspaper of a person who is a candidate for an elective municipal office that he is "a retail liquor dealer, and we are informed is under indictment for not canceling the stamps on empty liquor casks, the contents of which he had sold," such person not being under indictment for the above or any such crime, is a libel, and is actionable *per se*, and is not privileged.

3. A declaration, in the usual form, setting out the publication, and the above provision of the United States Statutes, and alleging that the defendant meant by such publication that the plaintiff was under indictment for the commission of the above felony, is good in law, although it alleges no *special* damage to the plaintiff.

4. Under chapter 3430, Laws of Florida, approved March 5, 1883, pleading over in bar, after demurrer to the declaration has been overruled, is not a waiver of the demurrer, but the judgment or ruling on the demurrer may be reviewed on appeal or writ of error, and no exception need be taken or noted in the lower court to secure such right of review.

5. In a plea of justification to an action for libel great certainty of averment is requisite. It must be as broad as, and justify the substance of, the specific charge or publication, its character and imputations. If it does not aver that the words are true in the sense imputed to them by proper innuendo, it is bad.

6. Good motives are essential to a justification or exoneration of publishing libelous matter which is true, under the Constitution of Florida.

7. The language of a publication alleged to be libelous should be construed as the common mind would naturally understand it.

8. The publication of matter otherwise libelous or actionable is not relieved of its libelous or actionable character by the statement that it is made on information.

9. The plea of "*not guilty*," in an action for libel, the charge being actionable *per se*, admits that it is false in fact. Where under such plea the publication is proved or admitted, and the alleged libel is actionable, malice cannot be so overcome by proof as to establish a defense, and defeat the plaintiff of his verdict; yet to repel the presumption of or prove a less degree of malice, and thus mitigate damages, defendant may show that at the time the publication was made he had good reason to believe and did believe the charge to be true. Facts and circumstances showing that the defendant had reasonable grounds to believe the charge to

JANUARY TERM, 1885. 433

Jones, Varnum & Co. v. Townsend's Adm'rix—Statement of Case.

be true may be introduced to repel malice and in mitigation of damages, though they tend to establish the truth of the alleged libel, or to create suspicion thereof, if they are not such as amount to proof of the truthfulness of the charge. Evidence so offered in mitigation, is to be treated as involving a conclusive admission that the charge is not true in fact.

10. When the special fact in controversy is whether the words of a third person, not under oath, were spoken or written, and not whether they were true, testimony as to whether they were spoken or written is not to be excluded as hearsay : so also, where language or statements, whether written or spoken, are the natural or inseparable concomitants of the principal facts in controversy.

11. Newspapers have no privilege that will·excuse them in printing libels of which any other publication would not be excused. The liberty of the press means that no previous license to publish shall be required, but not that the publisher of a newspaper shall be any less responsible than another person would be for publishing otherwise the same libelous matter.

12. The publication concerning a candidate for an elective office in a municipality, by a newspaper admitted to have at the time a large circulation beyond the limits of the municipality, of articles stating that he is under indictment for a felony, when such is not the fact, is not privileged.

13. The defendant in a libel suit should not be permitted to testify whether or not he exercised any care in ascertaining the truthfulness of the charge ; this is for the decision of the jury.

14. The result of the election at which the plaintiff is a candidate is not proper evidence for the defendant in the absence of allegation of special damage.

Appeal from Circuit Court for Duval county.

The appellants published in their newspaper, *The Florida Times-Union,* on March 20, 1883, at Jacksonville, of the intestate J. F. Townsend, who departed this life subsequent to the entry of this appeal, the following article : " We support Mr. DeCoursey for Assessor because he is one of the young colored men of this city who stands highest for character and ability. His opponent, Mr. Townsend, is

a retail liquor dealer, and we are informed that he is now under indictment for not cancelling the stamps on empty liquor casks, the contents of which he had sold." The first count of the declaration sets out the article and charges that plaintiff is the Townsend meant or referred to, and that the laws of the United States provide that " whoever shall not cancel the stamps required by law, etc., on liquor casks, etc., when the same shall become empty, shall be deemed guilty of a felony," etc., yet that the defendant " well knowing the premises, but contriving wickedly and maliciously, and intending to injure the plaintiff in his good name, fame and credit, and to bring him into public scandal and disgrace with and among all his neighbors and other good and worthy people of this State and the United States, and to cause it to be suspected and believed by those neighbors and other people that he had been and was guilty of the offence and misconduct mentioned to have been charged and imputed to him, and to vex, harass and oppress him," did publish such article, " meaning thereby that the said plaintiff was then under indictment for the commission of a felony, the said offence imputed to said plaintiff being indictable under the said laws and statutes of the United States."

The second count alleges that an election was to be held in said city on the second day of April, 1883, for, among other officers, an Assessor, for which office he was a candidate, and that defendants, well knowing the premises, contriving and maliciously intending to injure him in his capacity as a candidate, and to bring him into public scandal, infamy, etc., etc., and to cause it to be suspected and believed, etc., that he had been and was guilty, etc., etc., and to cause the electors and citizens not to vote for him, or to give him their support for said office, and to otherwise vex, harass and oppress him, did falsely, wickedly and maliciously

compose, print and publish in their said newspaper of and concerning plaintiff, and of and concerning him " as such candidate," the said article "meaning thereby that the said plaintiff had committed a felony, and was then under indictment for the same, the said offence imputed to said plaintiff as aforesaid being indictable" under the laws of the United States. The declaration charges also that by such grievances the plaintiff is greatly injured in his good name, fame and credit, and in his said trade and business, and brought into public scandal and disgrace among all his neighbors and other citizens and electors aforesaid, and all other good and worthy people, etc., and claims $5,000 damages.

The defendants demurred because each count " is bad in substance and neither sets forth a cause ot action, the ' words ' imputed by the former to the defendant not being actionable," and the " language " imputed to him by the latter " not constituting a cause of action." The plaintiff joined in demurrer and upon argument the demurrer was overruled by the Circuit Judge, which ruling is assigned as error.

The other facts are stated in the opinion.

*Randall, Walkers & Foster* and *R. B. Archibald* for Appellants.

*H. H. Buckman* for Appellee.

MR. JUSTICE RANEY delivered the opinion of the court:

1. (a.) The appellants in support of their demurrer to the declaration assert the gravamen of the charge to be that the libel imputed to the plaintiff the commission of a felony and that he had been indicted for such felony, the

charge being that he had been, as defendants were informed, indicted for not canceling the stamps on empty liquor casks, the contents of which he had sold. This charge they contend is not an offence against the State or United States laws.

Section 3324 of the Revised Statutes of the United States provides that " every person who empties or draws off any distilled spirits from a cask or package bearing any * * * stamps required by law, shall, at the time of emptying such cask, * * efface or obliterate said mark, stamp or brand. * * * * And every railroad company * * or person who receives or transports, or has in possession with intent to transport or procure to be transported, any such empty cask * * or any part thereof, having thereon any * * stamps required by law to be placed on any cask containing distilled spirits shall forfeit $300 for each such cask * * so received or transported or had in possession with intent aforesaid. * * *Every person who fails to efface and obliterate said stamp at the time of emptying such cask*, or who receives any such cask * * or part thereof *with the intent aforesaid*, or who transports the same, or knowingly aids or assists therein * * * * shall be deemed guilty of a felony, and shall be fined not less than $500, nor more than $10,-000, and imprisoned not less than one year nor more than five years." Counsel assert that the words first italicised are qualified by the words " with the intent aforesaid," which we have also italicised, and that "*failing to efface*," etc., is not punishable under the statute unless such failure is " with the intent to transport or cause to be transported such empty casks." We think such construction is contrary to the plain reading of the statute, and is strained. The statute enjoins it as an active duty upon every one emptying a cask to efface or obliterate at the time the stamp ; and, this, regardless of any intent as to the use or

disposition to be made of the cask. It also prohibits the receiving or transporting or having in possession any empty cask whose stamp has not been effaced, with intent to transport it, or procure the transportation thereof. It was clearly the purpose of the statute to punish, as well an omission to perform the active duty imposed, as the commission of that which is forbid. Not only do we think it evident that our construction gives the real meaning of the section, but it is a very natural and reasonable provision, as the performance of such duty is security against a possibility of the commission of the other offences contemplated by the section, and hence the advisability of punishing a failure to perform it. [☞ Since the adjournment of the term at which this decision was made we have had access to Dillon's Reports, and find our views supported by the opinion of Mr. Justice Miller, speaking for the U. S. Circuit Court, in U. S. vs. Ulrici, 3 Dillon, 532, 536, *et seq.*]

(*b.*) The article published is, in our opinion, actionable *per se* as a libel. It is not necessary to go into an explanation of the distinction between slander and libel, as to what words are actionable, and what are not. We are dealing now with *libel*, and not mere slander. There is, in view of the construction we have given the United States Statute, nothing in any authority we have seen which does not sustain the position that the article is a libel and *per se* actionable. It certainly tends to bring him into reproach and disgrace, and to degrade him in society, and is calculated to prejudice him in his trade, and injure him in his reputation, and deprive him of public confidence. It accuses him of being indicted for the commission of a crime punishable by law, and declared a felony, and is calculated to bring him into odium, contempt and ridicule. 37 Ohio State, 31; 6 Ohio, 532; 120 Mass., 177; 68 Maine, 295; Town-

shend on Slander and Libel, §176.   We think the demurrer to the declaration was properly overruled.

2. After the preceding demurrer was overruled the defendants filed pleas to the declaration.   Under the former practice in civil cases at law, pleading over after such demurrer overruled was a waiver of the demurrer.   17 Fla., 744.   And the record stood as if no demurrer had been filed, and consequently as if no judgment had been rendered on it; hence no exception could be taken to the judgment on appeal.   Johnson vs. P. R. R. Co., 16 Fla., 657. By chapter 3430 of our statute, approved March 5, 1883, it is provided that where, in civil cases, a party "pleads over or amends his pleading after judgment upon any demurrer he shall not thereby be held or considered to have waived or abandoned his exception to the judgment upon such demurrer, and in all cases where an appeal or writ of error shall hereafter be taken from any final judgment in any civil cause, the party suing out such appeal or writ of error shall have the right to have any ruling or judgment upon any demurrer in the cause reviewed and passed upon by the appellate court, whether such party shall have pleaded over or amended his pleading after such ruling upon such demurrer or not."   This act applies only to common law cases, as is evident from its language, and it has always been the practice in this State that upon an appeal from a final decree in chancery all such interlocutory orders on demurrers may be reviewed, and this, too, without any exception to them having been noted in the court below.   It is contended, as we understand, that it is necessary to formally except to the "*judgment*" or "*ruling*," and to have the same noted of record in the lower court in order to take advantage of this statute upon appeal.   We do not think the language of the statute sufficient to impose such requirement.   The purpose of the statute was to do away

with the waiver of the demurrer, which filing pleas con-
stituted, and to keep it and the proceedings thereon on the
record for all purposes, unqualified by subsequent pleading.
No waiver existing now, the error of the judgment on the
demurrer, if it be erroneous, is *error apparent on the record*,
and it is a well established rule that where there is " error
apparent," and it is not waived, no formal exception is
necessary to enable the party damaged to question it. Hi-
note vs. Simpson & Co., 17 Fla., 444; Pitman vs. Myrick,
16 Fla., 692. Where, prior to this statute, the demurrant
suffered final judgment to go against him on his demurrer
being overruled, no formal entry of exception was neces-
sary to enable him to avail himself on appeal of the excep-
tion taken in reality to such judgment by his appeal, and
proceedings in the appellate court. We think the same
rule applicable under this statute, particularly as it does
not require the noting of any exception, or other method,
as a means of taking advantage of it.

3. The defendants filed two pleas. The first is to the first
count and alleges that the plaintiff was, in January, 1881,
a retail liquor dealer in Duval county, Florida, and then
had in his possession at his place of business three empty
liquor casks out of which he had drawn off distilled spi-
rits, but that he *had not*, at the time of such emptying of
said casks, destroyed, effaced and obliterated the revenue
stamps, but had failed to do so, contrary to section 3324 of
the United States Revised Statutes. The second plea is to
the second count of the declaration, and is the same as the
other except that it alleges that the plaintiff *did* not, at the
time of drawing off and emptying such casks, *efface or ob-
literate* the stamps. The pleas conclude that " whereupon
defendants  *  *  in good faith, and, as they believed, for
the public good,  *  *  published the article, as it was

lawful for them to do, for the reason aforesaid." The plaintiff demurs.

It is a well-established rule that a plea of justification should fully meet the declaration in every substantial particular. Great certainty of averment is requisite. It must justify the substance of the publication, its character and imputations, and also the sense in which the innuendoes explain it, if they do so fairly. If the plea does not aver that the words are true, in the sense imputed to them in the complaint by proper innuendo, it is bad. It must be as broad as the charge, and must justify the specific charge claimed to be libelous. 2 Chitty's Pl., 662, note (q); Ames vs. Hazard, 8 R. I., 143; Stillwell vs. Barter, 19 Wend., 487; Donney vs. Dillon, 52 Ind. 442; Skinner vs. Powers, 1 Wend., 451; 13 John., 475; Skinner vs. Grant, 12 Vermont, 456; Slow vs. Converse, 4 Conn., 17; Andrews vs. Van Duser, 11 John., 37; 15 Mo., 480.

The charge complained of is not that the plaintiff was a retail liquor dealer, and had in his possession at his place of business three empty liquor casks, out of which he had drawn off distilled spirits, and that he had not at the time of such emptying effaced the revenue stamps, or did not efface the same, but it is more—that he was a retail liquor dealer and was *under indictment* for not canceling the stamps, and the innuendo is that the defendant meant that the plaintiff was under indictment for the commission of a felony, the offence imputed to the plaintiff being indictable under the laws of the United States. The pleas do not meet the declaration; they say nothing as to the indictment. It is one thing for one individual to publish of another that he has committed an offence which is a felony, and another thing to say that he has actually been indicted therefor.

The language used can be reasonably given no other

meaning than that the plaintiff was under indictment by a grand jury for the offence alluded to.   Such is the sense in which the common mind would naturally understand it. Townshend, §133, note 3.   It of course makes no difference that they are given " *on information,*" so far as the question of their being actionable, considered with reference to the demurrer to the declaration, or in considering these pleas, is concerned.   Treat vs. Browning, 4 Conn., 414 ; Kenny vs. McLaughlin, 5 Gray, 3 ; 8 John., 74 ; Skinner vs. Powers, 1 Wend., 452 ; 10 John., 447 ; 2 Gr. Ev., 390, note 2 ; 57 Wisconsin, 570.

The pleas are no answer to, or justification of, the charge, and were properly overruled.

4. The defendants then plead the general issue, not guilty.   A consideration of Circuit Court Rules 71 and 72 makes it plain that this plea puts in issue having published the article maliciously, and in the defamatory sense imputed.   It is not necessary to say more now as to what is put in issue by this plea.

The defendants upon the trial introduced as a witness Mr. Varnum.   They had previously admitted in open court that they " were proprietors and publishers of the newspaper on March 20, 1883, and are still, and published the article complained of, that the same is not true ; that the paper had a large circulation at the time in the State, the United States, and even to Europe."   Mr. Varnum was asked by their counsel who penned the article, and upon whose information it was written, and from whom he derived his information.   Each of these questions was objected to by attorney for the plaintiff, the first as *immaterial,* and the second and third as *improper* and *immaterial,* and, the objection being overruled no exception was taken ; when the witness answered that the article was penned by Mr. Charles H. Jones, one of the defendants, upon infor-

mation furnished by the witness, who derived it " from the office of Collector of Revenue of the United States—from Mr. S. C. Thompson." Witness was then asked what the information he obtained was, when the plaintiff objected on the ground that it was improper, hearsay, and that no evidence was admissible to prove or tending to prove the truth of the alleged libel. The objection was sustained and defendants excepted.

Mr. Thompson, being introduced by defendants as a witness, testified that he knew Mr. Townsend ; that he, Thompson, was, in March, 1883, Deputy Collector of Revenue for the United States, and in charge of the books and office of the Collector at that time. He was then asked : "Did Mr. Varnum get any information relative to Mr. Townsend being under indictment for selling liquor out of casks without the stamps having been cancelled thereon ? " This question was objected to on the same grounds as the last question put to Mr. Varnum.

It is settled that this plea admits that the words published are not true in fact, and under it the defendant cannot prove their truthfulfulness as a justification. It is also clear, as a general rule, that under such plea evidence is admissible to show a less degree of malice, and overcome, in part at least, the presumption thereof, and thus mitigate the damages. Actionable words in libel imply, in contemplation of law, malice sufficient at least to sustain an action, and entitle the plaintiff to a verdict, but the amount of the damages depends in part on the degree of malice, the malignity and wantonness of intention to injure, with which the words used were spoken, and though this malice cannot, under the plea of not guilty, be entirely overcome so as to defeat the action, where the words are actionable, evidence may be, and should be, received to show a less degree of malice and an absence of wanton in-

tention to injure. Lick vs. Owen, 47 Cal., 252, 258 ; 6 Gill & John., 413; 43 Maine, 287. Whether or not circumstances which of themselves are insufficient to establish the truth of the charge, yet may be introduced to show a less degree of malice and mitigate damages are admissible, is a vexed question. In Huson vs. Dale, 19 Mich., 28, it is said : " No question in modern times. has perhaps given rise to a greater amount of judicial controversy. The conflict in the decisions upon it is absolutely appalling and the attempt to trace the line of mere authority through the maze of hostile decisions would be calculated to only confuse and lead the mind astray from the real principles of justice involved in it, and could serve no useful end." See also Bush vs. Prosser, 11 N. Y., 357, *et seq.* In Huson vs. Dale, it is decided that to rebut malice, and thus mitigate damages, but not to establish a defence, it is competent to show under the general issue that at the time the slanderous words were uttered the defendant reasonably believed them to be true, and facts which may tend to establish the truth of the words are not for that reason inadmissible under the general issue. If they tend to rebut malice, and are offered for that purpose only, and are not such as must have been pleaded as justification, they are admissible.

It seems that prior to the decision in Underwood vs. Parks, 2 Strange, (17 George II,) 1200, the truth of the charge itself might be proved to rebut malice and mitigate damages, though the matter proven would have constituted a full defence had it been pleaded in justification. In this case upon the defendant offering to prove the *truth* of the words in mitigation, it was refused, the Chief-Justice saying that " at a meeting of all the judges upon a case that arose in the Common Pleas, a large majority of them had determined not to allow it *for the future*, but it should be

pleaded, whereby the plaintiff might be prepared to defend himself as well as to prove the speaking of the words."

This we understand to have been an attempt to prove the truth of the words to such an extent as had they been specially pleaded would have constituted a justification. It was a new rule of pleading for the protection of the plaintiff against surprise—against proving as true that which the plea admitted to be false. Prior to this case it was the law that no facts not amounting to a complete defence could be specially pleaded, and all facts going only in mitigation of damages could be shown under the general issue. The only necessary deduction from this case was that the defendant should not be permitted to prove a *justification* under the general issue, *in mitigation of damages*. This was a logical and reasonable rule. To apply this rule to cases where the defendant believed, and had reason to believe the charge was true, and he had acted in good faith thereupon in making it, but, seeing his mistake, he does not seek to assert its truthfulness, but admits by his plea (or, as in the case at bar, also specially in open court,) that it is not true, would be to prevent him from showing that he did so believe, and had good reason to believe it, and was not therefore actuated by that degree of malice which might otherwise be inferred from the making of the charge or from other evidence of malice introduced by the plaintiff. The plaintiff is permitted to give evidence in aggravation of damages, to prove at least a repetition by the defendant of the slander or libel, and, according to some authorities, more. "And for the very reason for which the plaintiff is permitted to give evidence of a degree of malice beyond that which the law implies, in order to aggravate the damages, should the defendant be allowed to give evidence in mitigation by showing that he uttered the words imputed to him upon probable grounds of suspicion of the plaintiff's guilt, calcu-

lated at the time to impress the belief of their truth ; and that they were not spoken for the fiend-like purpose of falsely and wantonly destroying his character." Ridger vs. Wolcot, 6 Gill & John., 418. It is held in this case to be a general rule that under such plea the defendant may give evidence of such facts and circumstances as show a ground of suspicion of the truth of the matters charged, not amounting to a justification or proof of guilt of the plaintiff, in mitigation of damages but not in bar of the action. " To deny," says the court, " to the defendant the right to show in the mitigation of damages only, on the plea of not guilty, the probable grounds of suspicion on which he spoke the words complained of, and thus to explain his conduct when he may subsequently to the time of speaking them have seen reason to change his opinion, would be to drive him, whether he will or not, and contrary to his own conviction at the time of pleading, to put in the plea of justification, which, if he fails to sustain, must often have the effect to increase the damages by furnishing proof on record of continued malice, though none in fact may continue to exist."

In Saunders vs. Mills, 6 Bingham, the defendant was permitted to show under the general issue in mitigation of damages that he copied a statement, held not to be privileged, from another newspaper. See also 23 Minnesota, 178. In Blackburn vs. Blackburn, 3 C. & P., 495, a letter received by the defendant was admitted to show the *bona fides* with which he acted in writing a letter containing statements slanderous and actionable. In Galloway vs. Courtney, 10 Richardson, 414, it was held a defendant might show in mitigation of damages, that before the words were spoken what another had said, with reference to the same offence as committed by the plaintiff, had been communicated to him. The witness in this case said that soon after

the alleged offence, which was the subject of the slander, was committed, he had talked with one Prothro about it. He would have testified what Prothro said, and that he, the witness, had communicated the same to the defendant. It was held that what a party cannot plead in justification he may give in evidence by way of mitigation, and that under the general issue he may prove facts and circumstances not amounting to actual proof, but going to create suspicion. 1 Nott & McC., 268. The evidence was held to be competent. In Williams vs. Minor, 18 Conn., 464, it was held that under the general issue without notice of special matter in defence or justification the defendant may prove, to repel the presumption of malice, or in mitigation of damages, facts and circumstances showing a reasonable ground of belief in the defendant of the truth of the words, but not amounting to proof of their actual truth. See also 1 Blackford, 369; 30 Mo., 502; 1 Kernan, 347; 9 Mich., 352; 1 Binney, 84–90; 2 Pick., 310; 27 Miss., 239; 1 Wend., 451; 5 M. & G., 366.

It is useless to deny that there is much authority to the contrary of the rule indicated by the preceding decisions, and holding that although circumstances tending to disprove, repel or lessen the degree of malice, and mitigate damages, may be introduced, yet that if the circumstances or proof be such as tend to prove the truth of the charge, or constitute a link in the chain of evidence of its truth, or tend to cast suspicion in the public mind of the defendants' guilt, that it is inadmissible. We not only think the other doctrine the better, and more just, and that the latter by its exception not only nearly emasculates itself, but moreover that its practical application is a matter of great difficulty without encroaching upon the very principle the exception embodies.

It is peculiarly the province of the jury to weigh and

determine what effect is to be given to all such mitigating circumstances.    The *quo animo* with which the words are spoken, or the written article published, should, in a case where no special damage is alleged and proven, regulate the amount of damages ; but whatever is calculated to show that the defendant acted in good faith, and with reasonable belief of the truth of the charge, and with good motives, should be permitted to go to the jury, who will give it the effect it should have.    In Storey vs. Early, 86 Ill., 461, where the doctrine against admitting circumstances tending to prove the truth or cast suspicion is adopted it was held that the defendant might, in mitigation of damages, show that he received *forged* letters, purporting to be written by respectable citizens, charging the plaintiff in substance, as did the libelous article, whereby the defendant was imposed on, and induced to publish the article. In Huson vs. Dale, the evidence which it was held should have been received, was in part verbal communications to the defendants by third persons.    In Coleman vs. Smithwick, 9 Johnson, 45, the objection was not to the verbal character of the communication made by Stanley to defendant, but to the manner of proving it, *i. e.*, by North, a bystander.    It may be that verbal communications relied upon may, in some cases, be of less weight than written, but it seems to us that their source of character, and the reasonableness of the defendants' belief as indicated by any circumstances bearing upon the question, would control their weight with the jury.    We think that Mr. Varnum and Mr. Thompson should have been permitted to answer the questions successfully objected to.    What this information was, the ruling of the judge has prevented us from knowing.    The mere fact that it may have tended to prove the truth is not ground of exclusion.    Nor is the testimony of Varnum, one of the defendants, inadmissible as

hearsay, on the ground asserted by Chancellor Kent, speaking for a majority of the court in Coleman vs. Southwick, 9 Johnson, 45, for excluding North's testimony, and denied by Judges Spencer and Yates, in the, to my mind, conclusive reasoning of Judge Spencer. Mr. Greenleaf, in his work on Evidence, §100, says it happens in many cases that the very fact in controversy is, whether the words of a third person, not under oath, were written or spoken, and not whether they were true, and in other cases, such language or statements, whether written or spoken, may be the natural or inseparable concomitants of the principal facts in controversy. In such cases, he says, it is obvious the words or writings are not within the meaning of hearsay, but are original and independent facts, admissible in proof of the issue, 10 Rich., 414; 1 Nott & McC., 268.

Evidence offered in mitigation under the general issue must be treated as a conclusive admission that the words or charge are not in fact true ; but the defendant may show to the jury that he believed them to be true, and had reasonable grounds to do so. Had there been anything in the answers which the witnesses should have made justifying their exclusion, they could have been excluded; still the questions were proper. Information received from the office of the Internal Revenue of the General Government, though erroneous, might very reasonably have caused one, though mistakenly, to believe that the libelous charge was true, and if one, under such circumstances, impelled by a good motive, is not in *fact* that malicious slanderer which proof of the mere publication would of itself imply without showing such circumstances, he will, nevertheless, in *law* be such, unless he is permitted to show them. We think he should on every principle of right, be permitted to do so, and then the jury can give them their proper weight.

5. It is claimed by the appellants that the publication is privileged. The Supreme Court of the United States, in White vs. Nichols, 3 Howard, 291, lays down the following conclusions: "1st. That every publication, either by writing, printing or pictures, which charges upon or imputes to any person that which renders him liable to punishment, or which is calculated to make him infamous or odious or ridiculous is *prima facie* a libel, and implies malice in the author and publisher towards the person concerning whom the publication is made; and that proof of malice can never be required in such cases of the party complaining, beyond proof of the publication itself, but justification, excuse or extenuation must each be shown, if either can be, by the defendant. 2d. That the description of cases, recognized as privileged communications, must be understood as exceptions to the above rule, and as being founded upon some apparently recognized obligation or motive, legal, moral, or social, which may fairly be presumed to have led to the publication, and, therefore, *prima facie*, relieves it from that just implication from which the above general rule of law is deduced. The rule of evidence as to such excepted cases is accordingly changed so as to impose it on the plaintiff to remove those presumptions flowing from the seeming obligations and situation of the parties, and to require of him to bring home to the defendant the existence of malice as the true motive of his conduct." In these excepted cases, as we understand the law, the seeming obligations and relations of the parties standing in them create of themselves in law a presumption that the defendant was not instigated by malice in making the publication, and this presumption must be overcame by the plaintiff. In such excepted or privileged cases malice may exist, but it is not *prima facie* presumed

29

to exist; still it may be shown by the excess of the language used by the defendant, or by other attendant circumstances indicating malice, and overcoming the presumption naturally obtaining in such excepted cases. Atwell vs. McIntosh, 120 Mass., 183 ; Fryer vs. Kennersly, 15 C. B., (N. S.,) 422 ; 5 E. & B., 528. Malice is implied from newspaper publications the same as from the publication otherwise of similar matter. 39 Mich., 376 ; 7 Cowen, 713 ; 42 N. H., 137, and *supra* ; 87 Penn. St., 385 ; 47 Wis., 659.

We do not think the publication in question privileged though made by a newspaper and of a candidate for office.

Our Bill of Rights provides that " every citizen may freely speak and write his sentiments on all subjects, being responsible for the abuse of that right, and no law shall be passed to restrain or abridge the liberty of speech or the press. In all criminal prosecutions or civil actions for libel the truth may be given in evidence to the jury, and if it should appear that the matter charged as libelous is true, but was published for good motives, the party shall be acquitted or exonerated."

The liberty of the press means simply that no previous license to publish shall be required, but not that the publisher of a newspaper shall be any less responsible than another person would be for publishing otherwise the same libelous matter. Davidson vs. Duncan, 7 E. & B., 229 ; Sheekell vs. Jackson, 10 Cush., 25 ; Sweeney vs. Baker, 13 W. Va., 182 ; 57 Wis., 570 ; 58 Maine, 295 ; 42 N. H., 137.

On the introduction of the printing press into England it was regarded as a State right, and subject to the coercion of the Crown; and was regulated by the King's proclamations, charters and licenses, and star chamber decrees ; and it was licensed by the Long Parliament. Townshend on Libel and Slander, note 3. The press does not possess any

immunities or privileges as to publishing libels which are not shared by every individual. 9 Minn., 138. It has no privilege excusing it in printing libels of which any other publication would not be excused. 39 Mich., 376.

In King vs. Root, Savage, C. J., said : " It has been contended that indulgence should be shown to the defendants as conductors of the press, whose duty it is to communicate to their readers what passes in the Legislature; but that their relation to the public is one which takes the case out of the general rule and imposes proof of express malice on the plaintiff. Their right to publish the truth is not questioned, but it is denied that in the capacity of editors of a newspaper they have any rights than such as are common to all. The liberty of the press will not be invaded by requiring the conductors of our presses to stand responsible for the truth of what they publish." Nor, we will add, by requiring them to show the same " good motives " which the bill of rights requires of all. In Davidson vs. Duncan, 7 E. & B., 231, Lord Campbell said, " in what an unhappy situation the calumniated person would be if the calumny might be published, and yet he could not bring an action and challenge the publishers to prove its truth."

A candidate for office, it is true, puts the character of his fitness, abilities and qualifications for the office, in issue. His conduct and acts, whatever they may be, may be freely commented on and boldly censured. The mere injustice of *criticism* made of his real acts or conduct, is no ground of recovery, whether such harsh *criticism* be made by a newspaper or by a voter, or other person having an interest in the election ; no malice will be implied in such cases. But defamatory assaults on his private character, the publication of falsehood in imputing to him crime or moral delinquency, cannot be justified on the ground of criticism, nor claimed to be privileged, or to be presumed to have been

made without malice, but with good motives.   In King vs.
Root, 7 Cowen, 26, the Chief-Justice said: "I fully sub-
scribe to the doctrine of Chief-Justice Parsons, (4 Mass.,
169,) that when any man shall become a candidate for an
elective office, he puts his character in issue with respect to
his fitness and qualifications for the office; that publica-
tions of the truth on that subject are not libelous, and that
the publication of falsehood against public officers or can-
didates deserves punishment."   In Lewis vs. Few, 5 John.,
Thompson, Justice, said: "It would, in my judgment, be
a monstrous doctrine to establish that when a man becomes
a candidate for an elective office, he thereby gives to others
a right to accuse him of any imaginable crime with impu-
nity.   If a man has committed a crime any one has a right
to charge him with it, and is not responsible for the accu-
sation, and can any one wish for more latitude than this?"
In Hamilton vs. Eno, 81 N. Y., 116, it is held that the offi-
cial acts of a public functionary may be fully criticised and
entire freedom of expression used in argument, sarcasm and
ridicule upon the act itself, and that the occasion will ex-
cuse everything but actual malice and evil purpose in the
critic; but the occasion will not of itself excuse an attack
upon the character and motive of the officer; to excuse this
the critic must show the truth of what he has uttered.   To
accuse one holding a public office of an offence is not priv-
ileged, and if the charge be false the utterer is liable, how-
ever good his motives, and this although the libel relate to
an act of the officer in discharge of his official duties.   In
Duncombe vs. Daniel, *supra*, (8 C. & P., 222,) the libel
was published in a newspaper and reflected on the charac-
ter of a candidate, and Chief-Justice Denman said that al-
though the privileges of electors are large they will not
justify the publication of every fact relating to the private
character of a candidate.   In Sweeny vs. Baker, 13 W.

## JANUARY TERM, 1885.    453

Jones, Varnum & Co., v. Townsend's Adm'rix—Opinion of Court.

Va., it was held that if a publication be made in a newspaper of a candidate for office with reference to his moral qualifications, which is libelous in its character, the party making such a publication may be held liable therefor, unless he proves the charge made to be true, and it will not in such case be sufficient to prove that the party publishing had good reason to believe and did believe it to be true. From the publication of such libelous charges the law implies malice as well as damages to the plaintiff, and the jury may, upon proof of the publication only, render a verdict for substantial damages.

In Duncombe vs. Daniel, it is held squarely that the fact that plaintiff was a candidate and the defendant a voter did not bring the case within the rules respecting privileged communications, (8 C. and P., 222,) and in Commonwealth vs. Clap, 4 Mass., 163, that publication of the *truth* concerning the character of a public elective officer, and relating to his qualifications for such office, with intent to inform the people, is not libel, and that the publication of *falsehood* and *calumny* against public officers and candidates is a very high offence ; and in Curtis vs. Mussey, 6 Gray, 261, that a discourse delivered pending the canvass for an election of a member of Congress upon the opinion and decision of a Commissioner of the United States Circuit Court, remanding a fugitive from service under the fugitive slave law, and containing passages accusing the Commissioner of "legal jesuitism," of prejudice and want of feeling, "of a partisan and ignoble act," and comparing him to Pilate and Judas, is not a privileged communication. In Enslow vs. Cramer, 57 Wis., 570, a newspaper article, stating among other things that it was charged against the plaintiff while holding the office of scaler of weights and measures he had made a practice of tampering with the weights of scales in order to swell the fees of the office, was held not to be priv-

ileged.   In Rearick vs. Wilcox, 81 Ill., 77, it was held that
the fact that the defendant, as the proprietor of a newspa-
per, in publishing a libelous article against the plaintiff,
who was a candidate for office was actuated by what he
believed to be for the public good, cannot be taken and con-
sidered in mitigation of damages.   An intention to serve
the public good does not authorize a defamation of private
character.   " We are aware," says the court, " of no case
which goes so far as to hold that private character of a per-
son who is a candidate for office can be destroyed by the
publication of a libelous article in a newspaper, notwith-
standing the election may be attended with the excitement
and feeling that not unfrequently enters into our  elections.
*    *   The law required the appellee as the publisher of a
journal to publish facts, and not libelous articles.   The
character and reputation of the appellant were as sacred,
and as much entitled to protection, when a candidate for
office as at any other time."   In Aldrich vs. Press Printing
Co., 9 Minn., 133, libelous matter published against a can-
didate for a public office is held not to be privileged com-
munication.   " We have never supposed that the freedom
of speech in this country could be carried to such an extent,
yet if such is the law as to an article published in a public
journal, there can be no good reason why it does not extend
to all channels of communication pending an election."   As-
suming that the case of Marks vs. Baker, 28 Minn., 162, is
to be taken as in conflict with the preceding case we prefer
the rule of Aldrich vs. Press Printing Company.   In Marks
vs. Baker, the libelous article was a discussion of two offi-
cial reports, between which there was a discrepancy, the
plaintiff having failed to charge himself with, but had in
fact accounted for, certain moneys.   We do not see that a
charge of *embezzlement* was necessary or fair, though there
was much to go in mitigation of damages.   We consider

the doctrine of Hamilton vs. Eno, 81 N. Y., 116, to be pre-ferable, it too being the case of an official report. In Palmer vs. City of Concord, 48 N. H., 211, it was held that publications charging an army with cowardice, or with improper treatment of non-combatants, are *prima facie* libelous, and unless justified or excused are punishable by indictment; and that newspaper publications alleging maladministration of public affairs are not libelous by reason of any *prima facie* defamatory matter therein contained, if the publisher, believing upon reasonable grounds that the facts alleged were true, published them in good faith for the purpose of inducing a reform, but if his motive was not a justifiable one, the truth of the facts alleged would not constitute a defence to an indictment for libel. There was nothing in the allegations of *maladministration* which reflected on the private character or motives of the officers of the General Government. "If information given in good faith to a private individual of the misconduct of his servant is privileged, equally so must be a communication to the voters of a *nation* concerning the misconduct of those whom they are taxed to support, and whose continuance in any service virtually depends on the *national* voice. To be effectual, the latter communication must be made in such form as to reach the public." We see nothing in the matter of the criticism upon the national administration which is libelous, nor is there any showing of communication to any one not interested. There is nothing in Crane vs. Boston, 13 Reporter, 650, reflecting on the personal character of the plaintiff.

The canon that " a communication made *bona fide* upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person *having a corresponding interest or duty*, although it contained criminating matter, which,

without this privilege, would be slanderous and actionable,"
is invoked by appellants. Baron Parke, in Toogood vs.
Spyring, 1 C., M. & R., 193, said : " In general an action
lies for the malicious publication of statements which are
false in fact, and injurious to the character of another
(within the well-known limits as to verbal slander), and
the law considers such publication as malicious unless it is
fairly made by a person in the discharge of some public or
private duty, whether legal or moral, or in the conduct of
his own affairs, in mattters where his interest is concerned,
In such cases the occasion prevents the inference of malice,
which the law draws from unauthorized communications,
and affords a qualified defence, depending upon the absence
of actual malice. If *fairly* warranted by any reasonable
occasion or exigency, and honestly made, such communica-
tions are protected for the common convenience and wel-
fare of society ; and the law has not restricted the right to
make them within any named limits."

Admitting for the sake of argument that the above le-
gal canon will cover the case of an elector or citizen of a
municipality who makes solely to the other electors or cit-
izens or inhabitants and persons happening to be in it at
the time, a communication of the kind in question, though
false, and places the burden upon the plaintiff to show
malice, still this does not cover the case where it is of a
candidate for office in such municipality, and is published
in a newspaper having the circulation that the defendants'
paper is shown to have had. The case of Toogood vs.
Spyring teaches nothing if it does not establish this. There
was no necessity for so publishing it. The protection of
the privilege may be lost by the manner of its exercise,
though the belief in the truth of the charge exist. In
Duncombe vs. Daniel, *supra*, it was claimed that the publi-
cation in the *Morning Post* was privileged on the ground

JANUARY TERM, 1885. 457

Jones, Varnum & Co., v. Townsend's Adm'rix—Opinion of Court.

that an elector is justified in apprising constituents of any circumstances affecting the character of a candidate, if he *bona fide* believes it to be true. Coleridge, J., said: " You must carry the argument further and show that he is at liberty to make the communication to all the world." The express admissions made upon the record as to the circulation of the defendants' newspaper are conclusive against any contention that the communication complained of was made solely to persons having a corresponding interest, or that they did not knowingly publish it to numbers having no interest in the matter, and this, too, without any necessity therefor. Admitting that the subject matter might have been privileged if made solely to fellow electors or others in the municipality, the defendants are not relieved of the broadcast publication by the fact that they are publishers of a newspaper. In Padmore vs. Lawrence, 11 A & E., 380, there is nothing inconsistent with the above. The defendant, in the presence of a third person, not an officer or a justice, charged plaintiff with having stolen his property, and afterwards repeated the charge to another person, also not an officer of justice, who was called in to search plaintiff with the consent of the latter, and it was held that the charge was privileged if defendant believed in its truth, acted *bona fide*, and did not make the charge before more persons or in stronger language than was *necessary*, and that it was a question for the jury and not the judge, whether the facts brought the case within the rule.

In Davidson vs. Duncan, 7 E. & B., 229, (A. D. 1857,) it is held that the *publication* of matter defamatory of an individual is not privileged because the libel is contained in a fair report in a newspaper of what passed at a public meeting, and it is said that a fair account of proceedings not *ex parte* in a court of justice is privileged, the reason being that the balance of public benefit from publicity is

great, and the inconvenience arising from the chance of in-
jury to private character being small as compared to the
convenience of publicity, and the proceedings being under
the control of the judges, " but it has never yet been con-
tended that such a privilege extends to a report of what
takes place at all public meetings. Even if confined to a
report of what was *relevant* to the object of the meeting it
would extend the privilege to an alarming extent.     *     *
The Legislature may think fit to extend the privilege of pub-
lication beyond the limits to which it now goes. If it does
it can impose such restrictions on the extension as it thinks
fit. We, in a court of law, can only say how the law now
stands; and according to that, it is clear the action lies and
the plea is bad." Speaking of the priviledge, as to judi-
cial proceedings, Wightman, J., said, "*prima facie* it is
actionable to publish a repetition of what is injurious to
another, unless justified by truth, or by its being a fair re-
port of what has been said in a public judicial proceeding,
not *ex parte*, or it may be in Parliament." In Hearn vs.
Stowell, 12 A. & E., 719, it was held that it the publica-
tion had been libelous it would not have been justifiable,
on the ground that it was promulgated at public meeting
called to petition Parliament against making a grant in sup-
port of a Roman Catholic College. In Smith vs. Higgins,
16 Gray, 251, the communication was by a voter and tax-
payer to a town meeting having power to decide on the
application of the plaintiffs for a reimbursement; there
was no newspaper publication. In Harrison vs. Bush, 5
E. & B., 344, (1855,) the communication praying for a re-
moval from office was claimed not to be privileged because
addressed to the Home Secretary, whereas properly it
should have been addressed to the Keeper of the Great
Seal. It was held that the above canon applies when the
communication is made to a person not, in fact, having

such interest or duty, but who might reasonably be, and is supposed by the party making such communication to have such interest or duty, and that though in this case it should have been addressed to the Keeper of the Great Seal, whose advice was generally acted upon in such cases, yet it might be considered as addressed to the Queen though the Home Secretary, who might himself have caused the inquiry to be made, have communicated with the Keeper, and in effect recommended the removal of the plaintiff. There was no newspaper publication. If we assume a case where the matter is privileged if made to the inhabitants of a municipality having a corresponding interest to that of the person communicating it, and then assume that said person is not the publisher of a newspaper, yet communicates it to a degree equivalent to the circulation of the defendants' newspaper, does not the privilege become entirely lost in the manner of its exercise?

Our conclusion is that the liberty of the press is no wise infringed upon by the rule that when newspapers publish charges imputing crime, or moral delinquency, to candidates for elective offices the publishers should previously see to their correctness. Moreover we do not recognize the moral obligation upon the publisher, whatever may be the candidate's want of mental or other qualifications for office, to publish, contrary to the fact, that he is under indictment for a felony or to otherwise assail his private character or impute moral delinquency to him. It is enough to permit him to show all circumstances indicative of a less degree of malice, and in mitigation of damages.

Considering all the testimony in this case, we are unable to say that a communication of qualified privilege throwing the burden on the plaintiff is shown; nor does the declaration upon its face make a case of such privilege. Enslow vs. Cramer, 47 Wis., 659.

6. We do not mean by anything we have said, or the language of any authority we have quoted from, to gainsay the doctrine of Wilson vs. Marks, 18 Fla., 322, that "good motives" are essential to a *justification* for publishing libelous matter which is true.

7. We do not see that it was proper for the defendants, or either of them, to say whether or not they exercised any care in ascertaining the truthfulness of the charge, but we think evidence of acts and circumstances showing an honest purpose to arrive at the truth, followed by action on information which it was reasonable to believe, and was actually believed, would be admissible with such information in mitigation. It was for the jury, and not the defendants, to say whether the latter had any reason to believe the charge to be true, but defendants, after being permitted to show circumstances calculated to reasonably create a belief, should be allowed to state their belief. The result of the election, we think, was not a proper subject of testimony; it has no connection with defendants' motives, nor is any *special* damage alleged in the declaration.

8. What we have said is sufficient without going specially over each of the numerous exceptions. The verdict must be set aside, the judgment is reversed and the case remanded for such proceedings as may be proper.