ALLAN MCLANE HAMILTON, Respondent, *v.* AMOS F. ENO, Appellant.

In an action for libel it is for the court to determine whether the alleged libel was a privileged communication ; but the questions of good faith, belief in the truth of the statement, and the existence of actual malice remain for the jury.

The rule is the same where the alleged libelous charge is made against a public officer as such.

To accuse one holding a public office of an offense is not privileged, and if the charge be false the utterer is liable, however good his motives ; and this, although the libel relate to an act of the officer in the discharge of his official duties.

The official acts of the officer may be freely criticised, and the occasion will excuse every thing but actual malice and evil purpose in the critic: but the occasion will not of itself excuse an attack upon the character and motives of the officer; to excuse this the critic must show the truth of what he has uttered.

Plaintiff, as assistant inspector of the board of health in the city of New York, made an official report, which was published in a public journal, in which he recommended highly a certain kind of street pavement, giving statistics. Defendant caused to be published a communication, to the effect that said statements in plaintiff's report were dictated by those interested in the pavement, and that plaintiff received a reward for their publication. In an action for libel *held*, that the occasion was such as made privileged any publication, however severe and sarcastic, questioning the statements as matters of fact, also the conclusions drawn therefrom and the reasoning of the report, but did not justify an attack upon the private character of the author; that defendant's publication was calculated to injure plaintiff's official and private reputation; and, in the absence of proof establishing the truth of the accusations therein, defendant was liable, however good may have been his motives.

Defendant's counsel asked the court to charge that unless defendant was moved by actual malice it was not a case for punitive damages; and that the jury should give such damages only as they thought the plaintiff had really borne. The court refused so to charge, but in reply to the request stated to the jury that malice might be inferred from the falsehood of the charges. *Held*, that the request was too broad, as it sought to limit the jury to the actual damage; and that therefore the refusal to charge was not error.

The court was also requested to charge that the jury should take into consideration the circumstances attending the making and publication of plaintiff's report, its importance and subject, and the public effect of it, and weigh them in mitigation of damages; the request was refused. *Held*, no error; that these facts could not lessen the responsibility of defendant for having charged plaintiff in substance with having taken a bribe.

The matter that will serve to mitigate damages in an action of libel must be connected with or bear upon the defamatory charge, *i. e.*, matter tending to prove the truth of the charge, or to show that there was induced in the defendant a belief of its truth, or prior publications of the plaintiff of such a nature as to exasperate and to call forth bitterness in reply.

(Argued April 5, 1880; decided June 1, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judg-

ment in favor of plaintiff entered upon a verdict. (Reported below, 16 Hun, 599.)

This was an action for libel. In 1874 plaintiff, who was assistant sanitary inspector of the board of health of the city of New York, in the discharge of his duties made a report to the superintendent of the health department, wherein, as is stated in the complaint, he "highly commended the pavement made and furnished by the Grahamite Pavement Company as a pavement of great excellence," giving statistics, etc. This report was published in the " *City Record,*" the official paper of the city. Defendant thereupon wrote a letter, which was published in the " *Tribune,*" containing the following in relation to plaintiff and his report :

" A young assistant inspector of the board of health by the name of A. McLane Hamilton has thought it worth while to look outside of the district assigned him, and to write to his superior officer in the health board a letter recommending the Grahamite Pavement. This letter, it would appear, was written under the dictation of the Grahamite Pavement Company, or without a full inquiry into the merits of the subject. What object there was in the production of this letter it might be difficult to learn. It is understood that the stock of the Grahamite Company has been placed ' where it will do the most good,' and the name of at least one officer of the city government can be given who, on taking official position, where it was supposed he might have to advocate or oppose this pavement, returned to the company stock which had been presented to him. When such an example is known, those who step aside from the strict line of duty, to advocate something outside of their proper official sphere, cannot feel aggrieved if their action is looked upon with suspicion."

The answer of the defendant alleged that his said letter was a privileged communication, alleged the truth of the statements therein, and that they were made in good faith and without malice. No proof was offered on the trial to show the truth of defendant's charges as affecting plaintiff.

Defendant's counsel made the following requests to charge, among others:

"6th. If the jury should consider that the defendant wrote the article complained of without any actual malicious intention to injure the plaintiff, then, inasmuch as the report of the plaintiff dealt with matters of wide public importance, affecting the interests of the defendant and other tax payers, the defendant had a right to criticise that report and the plaintiff's conduct in making it, and it is for the jury to determine whether or not he has, in the article complained of, gone beyond the limits of a proper criticism."

The court refused so to charge.

"7th. Every citizen has a right to criticise the words and acts of any other person in matters of public interest and importance, and such criticisms, made within reasonable limits and without actual malice, are privileged communications, and cannot be made the ground of a charge for libel."

To this request the court replied:

"Every citizen has the right to make such criticisms, but they are not privileged communications, and such right is no excuse for charging a man with corruption, if he has not the means of proving it. It is no fair criticism to charge a man with an offense which the party making the charge has not the means of proving."

"8th. In determining whether the article complained of was or was not within the limits of reasonable criticism, the jury are at liberty to take into view all the circumstances which attended the making or publication of the plaintiff's report, or which gave it importance, and, among other things, the subject-matter treated of therein, and the injury and danger to the community which might be caused by said report, if it were wrong in either its statements or its conclusions, and also the bearing and effect of the plaintiff's report upon matters of such grave public importance as that of street pavements."

The court refused so to charge.

"9th. The same matters should also be taken into view in mitigating the damages, if any have been sustained."

To this the court replied :

"They are not pleaded in mitigation and cannot be set up."

Defendant's counsel excepted to the refusals of the court to charge as requested.

*George De Forest Lord* for appellant.   Comments may be openly made upon the acts and conduct of public officers in matters of public interest and importance, and if they are within the limits of a fair and honest criticism, and are not inspired by actual malice they are privileged by the occasion, and, therefore, not libelous.  (Folkard's Starkie on ' Slander [4th Eng. ed.], 311, § 246.)  The existence of the privilege does not depend upon the truth of the statements made.   (Folkard's Starkie, 319, § 256 ; *King* v. *Root*, 4 Wend. 113 ; *Clark* v. *Molyneux*, 3 E. L. R. [Q. B. Div.] 247.)   The only limit to the privilege (where the occasion exists) is that the comments shall be within the limits of a fair and honest criticism and without actual malice.  (*Campbell* v. *Spottiswoode*, 32 L. J. [Q. B.] 185 ; *Cooper* v. *Lawson*, 8 Ad. & El. 746 ; *Wason* v. *Walter*, 38 L. J. [Q. B.] 34 ; *Henwood* v. *Harrison*, L. R., 7 C. P. ; *Turnbull* v. *Bird*, 2 F. & S. 508 ; *Eastwood* v. *Holmes*, 1 F. & F. 349 ; *Davis* v. *Duncan*, L. R., 9 C. P. 396 ; *Spill* v. *Maule*, L. R., 4 Exch. 232 ; *Klink* v. *Colby*, 46 N. Y. 427 [1871] ; *Clark* v. *Molyneux*, 3 E. L. R. [Q. B. Div.] 237.)   The question of malice is exclusively for the jury whenever (as in a case of privilege) express malice — not legal malice — must be proved.  (*Clark* v. *Molyneux*, 3 E. L. R. [Q. B. Div.] 237 ; *Klink* v. *Colby*, 46 N. Y. 427.)  The jury must be left to determine whether the alleged libel is in excess of the privilege — exceeds the limits of fair and honest criticism.  (*Dickinson* v. *Earl of Wilton*, 1 F. & F. 426 ; *O'Donoghue* v. *Hussey*, 5 Irish Rep. [C. L.] 124, 135 ; *Campbell* v. *Spottiswoode*, 32 L. J. [Q. B.] 185 ; *Cooke* v. *Wildes*, 5 El. & Bl. 328 ; *Cooper* v. *Lawson*, 8 Ad. & El. 746.)   The failure to submit to the jury the question whether the defendant's was, or was not, a fair criticism of the plaintiff's report was a material error.  (*O'Donoghue* v. *Hussey*, 5 Irish Rep.

[C. L.] 124; *Lewis* v. *Chapman*, 16 N. Y. 369, 373; *Cooper* v. *Lawson*, 8 Ad. & El. 746; *Wason* v. *Walter*, 39 L. J. [Q. B.] 34.) The court erred in refusing to charge that unless the jury find that the defendant was influenced by actual malice, this is not a case for punitive damages. (*Clark* v. *Molyneux*, 3 E. L. R. [Q. B. Div.] 247; Townshend on Slander, 537, 538; *Knight* v. *Foster*, 39 N. Y. 576; *Phil., Wilm. & B. R. R.* v. *Quigley*, 21 How. Sup. Ct. 213; *Taylor* v. *Church*, 8 N. Y. 452; *Hunt* v. *Burnett*, 4 E. D. Smith, 659; *Campbell* v. *Spottiswoode*, 32 L. J. [Q. B.] 194; *Spooner* v. *Keeler*, 51 N. Y. 527.)

*Francis C. Barlow* for the respondent. This publication was libelous *per se* without any reference to the special character of the plaintiff as a physician or a public officer. (*Sanderson* v. *Caldwell*, 45 N. Y. 398, 401, 402; *Oldfield* v. *R. R. Co.* 14 id. 310, 321; *Bergin* v. *Wemple*, 30 id. 319; *Parker* v. *Jervis*, 34 How. 254.) The evidence offered in justification was properly rejected, because it did not tend to prove that the charge was true. (Townshend on Libel and Slander [3d ed., 1877], 362, 369; *Stilwell* v. *Barter*, 19 Wend. 487, 490; *Greeley* v. *Littlejohn*, 13 Abb. 48.) The evidence was not competent in mitigation. (*Bush* v. *Prosser*, 11 N. Y. 347, 349, 360, 361; *Dolevin* v. *Wilder*, 34 How. 491; *Williams* v. *Miner*, 18 Conn. 463, 464; *Purple* v. *Horton*, 13 Wend. 25; *Heaton* v. *Wright*, 10 How. 83; *Spooner* v. *Keeler*, 51 N. Y. 527, 535, 536.) Facts in mitigation are unavailable unless pleaded. (*Willower* v. *Hill*, 72 N. Y. 38; Code, § 165; *Spooner* v. *Keeler*, 51 N. Y. 527: *Bush* v. *Prosser*, 11 id. 347; *Bisbey* v. *Shaw*, 12 id. 67; *Wachter* v. *Quenzer*, 29 id. 547; *Gorton* v. *Keeler*, 51 Barb. 475; *King* v. *Root*, 7 Cow. 613; *Cooper* v. *Barber*, 24 Wend. 105; *Hatfield* v. *Lasher*, 17 Hun, 23; *Hager* v. *Tibbets*, 2 Abb. [N. S.] 97, 102; *Fry* v. *Bennett*, 5 Sandf. 54, 74, 75; *Finck* v. *Justh*, 14 Abb. [N. S.] 107, 109.) It was not necessary for the plaintiff to prove the charges to be false. (*Hunt* v. *Bennett*, 19 N. Y. 176; *Sanderson* v. *Caldwell*, 45 id. 403.) It is not necessary to prove the actual

malice of a publication by extrinsic evidence, for the jury may infer it from the face of the libel itself. (*Wright* v. *Woodgate*, 2 Cr., M. & R. 573, 577; *White* v. *Nichols*, 3 How. [U. S.] 287.) Although a person making a statement may have an interest in the question, yet if he makes it too broadly, or to persons who have no interest, he goes outside of his privilege. (*Taylor* v. *Church*, 8 N. Y. 452, 460; *Hunt* v. *Bennett*, 19 id. 175; *Sunderlin* v. *Bradstreet*, 46 id. 192, 193; *Quigley* v. *Penn. R. R.*, 21 How. [U. S.] 202, 212.) It is for the court to decide, as matter of law, whether the occasion be privileged. (*Klinck* v. *Colby*, 46 N. Y. 431; *Janson* v. *Stuart*, 1 T. R. 748; *White* v. *Nichols*, 3 How. [U. S.] 266; *Cooke* v. *Wildes*, 5 El. & Bl. 328, 340.) Defendant was bound to establish the facts showing the privilege, and, among others, that the publication was made only " to those having a corresponding interest." (*Hunt* v. *Bennett*, 19 N. Y. 175.) The court, in the case at bar, ought not to have left it to the jury to say whether the defendant's article was a " fair and reasonable criticism." (*Marston* v. *Nultee*, 8 Bosw. 132; *Godson* v. *Howe*, 1 Brod. & Bing. 7; *Cooper* v. *Lawson*, 8 Adol. & Ellis, 752.)

FOLGER, Ch. J. The principal question involved here is whether the publication made by the defendant was a privileged communication; and if it was, whether it was rightly dealt with by the trial court.

This question was up in *Klinck* v. *Colby* (46 N. Y. 427), so far as private citizens on each side of it were concerned. We there held, that it is for the court to determine whether the subject-matter to which the alleged libel relates, the interest in it of the author of it, or his relations to it, are such as to furnish an excuse; but that the question of good faith, belief in the truth of the statement, and the existence of actual malice, remains for the jury. We do not perceive that the rule should differ in this respect, when one of the parties was a public officer, and the charge was made against him as such. The court is then, also, to judge whether the occasion of the utterance was such as that the communication was privileged. The

jury is still to find whether the occasion has been abused or misused.

Whether the trial court kept within this rule is not raised by the exception to the charge. That exception was too general. The defendant rests, also, on two requests to charge and the refusals, as follows:

The sixth request, in effect, asked the court to instruct the jury that if the defendant had not actual malicious intention to injure the plaintiff, it was for them to determine whether he had gone beyond the limits of a proper criticism. The court refused. The seventh request is like unto the sixth. It in effect asked the court to charge that every citizen has the right to criticise the acts and words of any other person in a matter of public interest, and if done within reasonable limits and without actual malice, his criticism is a privileged communication, and not libelous. The court did not in terms refuse so to charge. It charged in response to the request, that every citizen had the right thus to criticise, but that his criticism was not privileged, and the right was no excuse for imputing corruption, or any offense which the critic could not prove. Both requests, and the refusal, and the charge, must be taken as referring to the case then on trial, and the requests as asserting that that case came within the proposition contained in them; and the refusal and charge that were made in response to the requests, as holding that so far as the requests were refused or varied from, that this case did not come within that proposition.

The difference between the learned counsel for the defendant and the learned court was this: The proposition of the counsel was that though the charge was defamatory, not provable and untrue, yet, if made without malice, it was privileged and excused. The court held that it was not a privileged communication; that the occasion did not excuse the defendant in making a defamatory charge against the plaintiff, and that to be excused the defendant must have the means of proving that the charge made was true; that the defendant was bound to keep within the limits of fair criticism; and that to make a charge of an

offense without the power to prove it, was not fair criticism. And which was right is the main question for us to answer.

There are certain communications which are privileged and *prima facie* excusable because of the occasion; that is, they will not be deemed libelous, though the party making them may not be able to prove them to be true, and may in fact be wrong in thinking them to be so. The effect of the privilege is this: that the law will not imply malice from the fact of the publication, and without malice, express or implied, there is no libel. To make the author of the charge liable in such case, actual malice must be shown to have moved him. Whether there was actual malice is for the jury to say, either from direct proof, or as an inference from other proof, or from the libel itself.

The occasion that makes a communication privileged is when one has an interest in a matter, or a duty in regard to it, or there is a propriety in utterance, and he makes a statement in good faith to another who has a like interest or duty, or to whom a like propriety attaches to hear the utterance. (*Van Wyck* v. *Aspinwall*, 17 N. Y. 190; *Klinck* v. *Colby, supra; Sunderlin* v. *Bradstreet*, 46 N. Y. 191.) And, in a qualified way, the occasion exists when there has been put forth a publication of general public interest, or the publication thus made in itself is one to which public interest has been invited. Then there is a right to make comment upon that publication. And like to this are the acts and conduct of public functionaries, and, of course, their official productions, when made public by themselves or in the due course of the public business.

We think that the occasion of the defendant's publication was such as that first stated. The plaintiff had made an official report recommending a certain kind of street pavement. It was calculated to make public favor for that pavement. The official character of its author, which was impressed upon the report, made it more important and effective. If the municipal authorities should be led to adopt it, by the public favor shown to it, or the public demand for it, and use it upon the streets, that action would be at the cost of property owners,

and to the public good or ill. The official report tending to this result was spread before the community in a public journal, and the common attention drawn to it. Every citizen had a right to discuss the question as publicly as the report had done so. So that the time and mode of the publication of the defendant made the occasion of it thus far privileged. Such an occasion must, however, be used fairly and in good faith, with a view to the public interest and good, and without evil or malicious motive. In the case in hand, there was the report of the plaintiff, and it was his report made officially. It was, therefore, the subject of criticism as a work upon a matter of public interest, and also as the act of an official person. As a work, the defendant might question its statements of fact and deny them ; he might expose misrepresentations and point out errors ; he might combat its reasoning and show its conclusions ill drawn ; and he might do so with satire and ridicule, so long as he directed those missiles at the report and the contents of it. But he could not attack the private character of the author; to do so would be libelous. (*Cooper* v. *Stone*, 24 Wend. 442.) Now, it did not affect the report or its merits, so far as the author was concerned as a private person, that he wrote what was dictated to him by the Pavement Company. As a private person, he had a right to put in writing whatever the officers of that company told to him. It would not have affected it or its merits in such case, if he had received a reward from that company for what he wrote. As a private person, he had a right to take pay for the exercise of his literary ability. And to say, concerning a printed publication, that the author of it wrote it as he was told to do by one having an interest in the effect to be produced by it, and had a recompense from that one therefor, would not impute moral dereliction nor venality, and would be no more than a fair mode of lessening the weight of the statements of fact and parrying the force of the reasoning.

It is, therefore, with the report as an official act, and with its author as a public servant, that we are principally concerned. It is apparent that to say of such a matter from such a person

that its statements were dictated by interested persons, and that the author was rewarded for it from their private means, is calculated to injure the official and private reputation of the author. Now one may in good faith publish the truth concerning a public officer, but if he states that which is false and aspersive, he is liable therefor, however good his motives. A person in public office is no less to be protected than one who is a candidate for public office; and the law of libel must be the same in each case. The public have as much interest in knowing the true character of one who is seeking a place of trust as that of one who holds it. There must be as much and no more privilege of utterance as to one than the other. Yet it is the law of this State that to accuse a candidate for public office of an offense is not privileged, though the charge was made without evil motive, and in the exercise of a political right (*Lewis* v. *Few*, 5 Johns. 1); and though the libel relate to a public act of the candidate in his official place. (Id. ; *Root* v. *King*, 7 Cow. 613, affirmed on error brought, 4 Wend. 113.) It cannot be different when the charge is against one holding an office. (See *Edsall* v. *Brooks*, 17 Abb. Pr. 221.) So it seems to be in other States. (*Com.* v. *Clapp*, 4 Mass. 163 ; *Curtis* v. *Mussey*, 6 Gray, 261 ; *Seely* v. *Blair*, Wright [Ohio], 358, 683 ; *Brewer* v. *Weakley*, 2 Overton [Tenn.], 99 ; *Mayrant* v. *Richardson*, 1 Nott & McCord [So. Car.], 347.) It is not needful that we go into an examination and discussion of the English decisions cited to us in behalf of the appellant, and many others that may be found in the English books. Were they uniform and consistent in stating a rule different from that to be found in the reports of our own State, we would not be at liberty to follow them. When it is doubtful if, on the whole, and after due comparison and collation, they do not assert the same principle as our own decisions, still less need we take time in reviewing them.

We are of the opinion that the official act of a public functionary may be freely criticised, and entire freedom of expression used in argument, sarcasm and ridicule upon the act itself ; and that then the occasion will excuse every thing but actual malice and evil purpose in the critic. We are of the opinion

that the occasion will not of itself excuse an aspersive attack upon the character and motives of the officer; and that to be excused, the critic must show the truth of what he has uttered of that kind. We, therefore, hold that the trial court was right in refusing the requests of the defendant, and in charging as it did in response thereto. This conclusion disposes, also, of the eighth request to charge.

The defendant offered to prove that the official report of the plaintiff was inaccurate, and misstated matter purporting to have been drawn from the report of another public officer. The evidence was rejected. We think that the evidence was immaterial. The charge was that the plaintiff, for an illicit reward, made an official report, at the dictation of the company giving the reward. The defendant did not profess to be able to prove the truth of this charge in its extent; nor to make any evidence that the plaintiff had taken such reward. The latter was what gave to the charge its keen edge. Unless the defendant was prepared to justify or mitigate it, it was useless to do so as to the matter less than it.

The defendant asked the court to charge that unless the defendant was moved by actual malice, it was not a case for punitive damages; and that the jury should give such damages only as they thought that the plaintiff had really borne. The court refused so to charge, but did in reply to the request say to the jury that malice might be inferred from the falsehood of the charge. One difficulty with the request was that it asked too much, when it sought to limit the jury to the actual damage of the plaintiff. That would have been what he had proved, in precise figures, the amount of his damage to have been. No such rule prevails in actions for tort. The court was not called upon to take the good part of the request from the bad part, and to charge the good.

The ninth request to charge was that the jury should take into consideration the circumstances attending the making and publication of plaintiff's report, its importance and subject, and the public effect of it, and weigh them in mitigation of damages. The court remarked that these things were not pleaded

in mitigation of damages. Perhaps the court was not accurate in this remark. But it did properly refuse the request. None of these things could lessen the responsibility for charging the plaintiff with having taken a bribe. The matter that will serve to mitigate damages must be connected with or bear upon the defamatory charge. If the defendant had set up facts which had a natural tendency to induce belief that the plaintiff had taken illicit reward, or if he had averred that from all or any of the facts averred in his answer he was led to and had that belief when he made his publication, he might ask that such be considered in mitigation of damages. This case was otherwise. There was nothing in the matter stated in the last paragraph of the defendant's answer that tended to prove the truth of the charge, or to show that there was induced in the defendant a belief of the truth of it. (*Bush* v. *Prosser*, 11 N. Y. 347; *Bisbey* v. *Shaw*, 12 id. 67.) Sometimes a prior publication by the plaintiff has been submitted to the jury for consideration on the question of mitigation; but then the publication was such in its nature as to exasperate feeling and to call forth bitterness in reply. Here the report of the plaintiff was decorous in tone and sober in statement. In itself it was not provocative of intemperate answer.

The judgment should be affirmed.

All concur.

Judgment affirmed.