## McAVOY v. PRESS PUB. CO.

(Supreme Court, Appellate Division, First Department. July 12, 1906.)

1. LIBEL—PUBLIC OFFICERS—FITNESS.

To charge that a public officer is unfit for the office which he holds is libelous.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Libel and Slander, §§ 91–96.]

2. SAME—FITNESS FOR OFFICE—DISCUSSION.

Where, as a matter of fact or law, an officer is unfit or disqualified to hold the office, a newspaper, no less than an individual, is entitled to say so, and to discuss the legal qualifications for the office, without being guilty of libel.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Libel and Slander, §§ 144–146.]

3. MUNICIPAL CORPORATIONS—POLICE DEPARTMENT—POLICE COMMISSIONER—DEPUTIES—DISQUALIFICATIONS.

Revised Greater New York Charter, Laws 1901, p. 115, c. 466, § 270, as amended by Laws 1903, p. 198, c. 60, creates the office of police commissioner, and authorizes him to appoint three deputies, the first or chief deputy to have charge, in the absence or disability of the commissioner, of the police, and perform all duties of the commissioner except making appointments and transfers. Section 271 (Laws 1901, p. 116, c. 466) declares that the commissioner shall have control and administration of the police department and force. Section 292 (page 124) declares that he shall be the chief executive officer of the police force, and section 306 (page 131) provides that no person in the police force shall be permitted to "join or be or become" a member of any political club or association. *Held*, that a deputy police commissioner was an "executive officer" of the force, subject to the same disabilities as the commissioner, and hence was legally disqualified to hold the office where at the time and after his appointment he was a member of the Tammany Hall general committee, and a district leader thereof.

Appeal from Trial Term, New York County.

Actions by Thomas F. McAvoy against the Press Publishing Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial ordered.

Argued before O'BRIEN, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Bowers & Sands (John M. Bowers, of counsel), for appellant.

John V. McAvoy (Henry L. Scheuerman, of counsel), for respondent.

CLARKE, J. Plaintiff brought five separate actions upon separate alleged libels published in the World. The five actions were duly consolidated and tried as one case. Plaintiff at the time of the publication was the first deputy commissioner of police of the city of New York, and the matter complained of was alleged to have been published of and concerning him in his said capacity as first deputy commissioner of police. The defendant in its answer alleged certain facts as a defense in justification, and then repeated these alleged under a plea of mitigation, and set up that the facts so alleged came to the knowledge of the defendant prior to the publication of such articles, and that such articles

were published in the honest belief that they were true, and in reliance upon the information received. A further defense was set up that the libelous matter was fair comment and criticism on the act of a public official, and therefore privileged. Upon the trial the publication of the various articles was admitted, and defendant attempted to prove the allegations pleaded as aforesaid.

It can serve no useful purpose to discuss the many questions arising upon this voluminous record, inasmuch as the judgment must be reversed, and a new trial ordered, upon what we conceive to be an erroneous construction of the law governing the office which the plaintiff held.

Among the alleged libelous statements complained of is the following:

"Mr. McAdoo gets experience. Having learned the way in Mulberry street, Police Commissioner McAdoo is now just beginning to make his presence felt. Raids from headquarters are giving gamblers a grieved expression. Still the commissioner should not lose sight of the most important business before him, which is to get rid of the unfit and discredited McAvoy. Start fresh, and start fair, Mr. Commissioner."

And the complaint proceeds:

"Meaning and intending by the said words and said article to charge that plaintiff is unfit and incompetent to hold the office of first deputy commissioner of police of the city of New York, and that he should be removed for such alleged unfitness and incompetence."

As to this cause of action, the learned court charged as follows:

"With reference to the third cause of action, namely, the libel of the 18th of March, 1904, I charge you that that is libelous per se, and that, so far as the innuendo is concerned, it does not warrant a finding that it meant anything more than, so far as the innuendo matter is referred to, that the plaintiff was unfit to hold the office of first deputy commissioner of police. Beyond that, the innuendo is unsupported, so that, gentlemen, this article you may consider, and you will determine whether or not it meant that the plaintiff was unfit at the time to hold the office of first deputy commissioner of police of the city of New York. If you find that it did mean that, you may consider it as a libel imputing that to him, namely, that he was unfit to hold the office of first deputy commissioner of police of the city of New York, and if it did impute that to him, it was a libel."

It is quite clear that it is libelous to charge that a public officer is unfit for the office which he holds. To advise the police commissioner that his most important business was to get rid of his unfit and discredited deputy, so that he might start fresh and fair, was to hold the deputy up to the attention of the community, to bring him into bad favor, and to affect him seriously in his office. The defendant attempted to justify by claiming that, as matter of law, the plaintiff was unfit to take or hold the office because he was a member of a political club, association, society, and committee, and that this fact itself discredited him in the holding of the office. If this claim be well founded, then the article was not objectionable, because, if, as matter of fact and law, an officer is unfit to hold the office, a newspaper, no less than an individual, has the right to say so. Every citizen has a right to discuss the public acts of public men, and the legal qualifications for office is a matter of concern to every citizen. The defendant proved, and the plaintiff admit-

ted, that at the time the plaintiff was appointed first deputy commissioner of police, and during all the time mentioned in the complaint and down to the time of the trial, the plaintiff had been, and still was, a member of the Tammany Hall general committee of the Twenty-Third assembly district in the city of New York, and was the district leader thereof, and, as such, actively engaged in the performance of the duties thereof. Therefore, that he was a member of a political association, society, and committee is established without contradiction.

Section 270 of the Revised Greater New York Charter (chapter 466, p. 115, of the Laws of 1901, as amended by chapter 60, p. 198, of the Laws of 1903) provides that:

"The head of the police department shall be called the police commissioner, who shall be appointed by the mayor, and shall hold office for the term of five years, and until his successor shall be appointed and has qualified. * * * The said commissioner shall have the power to appoint, from the citizens of the United States and residents of the said city, and at pleasure remove, three deputies, to be known as first deputy commissioner, second deputy commissioner and third deputy commissioner. The first deputy commissioner, shall, during the absence or disability of the commissioner, possess all the powers and perform all the duties of the commissioner except the power of making appointments and transfers. * * * The commissioner shall define the duties of the deputy commissioners, and may delegate to either of them any of his powers, except the power of making appointments and transfers."

Section 271 (Laws 1901, p. 116, c. 466) provides that:

"The said police commissioner shall have cognizance and control of the government, administration, disposition and discipline of the said police department, and of the police force of said department."

Section 292 provides that:

"The police commissioner shall be the chief executive officer of the police force. * * *"

Section 306 provides that:

"No person in the police force shall be permitted to contribute any moneys, directly or indirectly, to any political fund or to join or be or become a member of any political club or association. * * *"

Acting under and in accordance with those provisions, the plaintiff was, on the 1st day of January, 1904, appointed first deputy commissioner of police, to hold office at the pleasure of the police commissioner, and on the same day his duties were defined by the commissioner as follows:

"I hereby define the duties of the first deputy commissioner to be, until otherwise ordered, to have cognizance and control of the government, administration, and discipline of so much of the police department and the police force of said department as is located in the boroughs of Manhattan, the Bronx, and Richmond, and to enforce the laws and ordinance in said boroughs so far as the said enforcement devolves upon the police. To hold trials of any of the delinquents of any of the boroughs, and, in the absence or disability of the commissioner, to certify the department pay roll, and to perform all the other duties of the police commissioner, except making appointments and transfers. The first deputy commissioner will also have special and immediate charge of the enforcement of all ordinances relating to streets, street traffic, street cleaning, department of health, department of the bureau of licenses, so far as the same devolves on the police. * * * Ordered, that in ad-

dition to the duties delegated to the first deputy commissioner this day, he be also directed to perform the duties imposed by law upon the police commissioner as a member of the board of health."

From the provisions of the charter hereinbefore cited it is, I think, apparent that, as it is provided that "the police commissioner shall be the chief executive officer of the police force," the commissioner comes within the purview of the prohibition that "no person in the police force shall be permitted * * . * to join or be or become a member of any political club or association." I think, further, that as it is provided that "the first deputy commissioner shall, during the absence or disability of the commissioner, possess all the powers and perform all the duties of the commissioner, except the power of making appointments and transfers," the deputy is an executive officer of the force, and is subject to the same disability as the commissioner. It would be anomalous to make such a rule of conduct applicable to the subordinates, to members of the uniformed force, and to the chief executive officer thereof—the commissioner—and not to apply it to his deputy, who stands in his place and stead, and under certain circumstances possesses all of his powers, with the one exception noted. The intent of the statute is obvious. It was to keep the police out of active, open participation in party politics, and the management thereof, and clearly the deputy commissioner comes within the fair intendment of the statute. It will be noted that the provision is that the officer shall not "join, be or become a member," etc., and the excuse offered that the plaintiff did not offend against the statute because, having been a member of a political association at the time of his appointment, he did not join or become a member, falls to the ground. If he desired to accept the office, his duty was to resign from his political association. The two offices of district leader and deputy police commissioner were incompatible; obviously so, as a matter of fact, and inhibited by the law. This view is borne out by the provisions of section 41aa of the Penal Code, passed in 1899, that:

"Any person who being a police commissioner or an officer or member of any police force in this state * * * joins or becomes a member of any political club, association, society or committee is guilty of a misdemeanor."

As we have seen, the deputy commissioner is one of the executive officers of the force, and while, under the technical interpretation given to penal statutes, it might be that he would not be liable to indictment and conviction under said section unless he "joined or became" a member during the incumbency of his office, yet this general law, applicable to the whole state, throws light upon the provisions of the charter, and emphasizes the policy of the state to keep the police out of active party management. That the policy so indicated is wise, no one will deny. That it is lawful to make such a requirement as an incident of holding the office must be admitted. Therefore, such being the law, and the facts being undisputed, it was error for the learned court to have refused to charge the request "that, as matter of law, the defendant is entitled to a verdict upon this article," and to have refused certain of the requests of defendant as to the privilege which exists in regard to discussing the official acts of public officers, illustrated by this request, as one of those refused:

"That the official act and the official conduct of a public officer may be free- ly criticised, and an entire freedom of expression used in argument, sarcasm, and ridicule upon the act itself. and that then the occasion will excuse every- thing but actual malice and evil purposes in the criticism."

For which Hamilton v. Eno, 81 N. Y., at page 126, is a direct au- thority.

The difficulty in the trial of this case was that there were five different actions consolidated into one, and that principles of law applicable to the facts in one case do not apply to others; but we feel as to part of the alleged causes of action that the defendant was entitled to the benefit of the rules laid down, and, as we are unable to separate the verdict in order to see whether or not the error was harmless, it follows that the judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event.    All concur.