## J. A. LOGAN v. J. D. HODGES.

(Filed 13 November, 1907).

**1. Libel—Evidence—Postal Card.**

In an action to recover damages for publication of a libel concerning a robbery of public moneys from the plaintiff, the County Treasurer, a postal card mailed by defendant is actionable libel, *per se*, whereon he had written: "Turn your searchlights on your Treasurer and the man who boards with him, and the postmaster, and you will find where the money went."

**2. Libel—Evidence—Postal Card—Publication—Mail.**

The publication of the libel is shown when proved by the addressee that he had received a postal card in course of mail, whereon the libellous matter was written by the defendant, as such is likely to be communicated to the postal clerks and employees through whose hands it may pass.

**3. Libel—Postal Card—Absolute Privilege—Qualified Privilege.**

A postal card containing a libellous communication concerning a public official of a county, though written in the public interest, is not absolutely or qualifiedly privileged when not addressed to some person having jurisdiction to entertain the complaint, or power to redress the grievance, or some duty to perform, or interest in connection with it.

**4. Libel—Postal Card—Pleadings—Evidence—Good Faith—Malice.**

When, in an action for damages for the publication of a libel, justification is not pleaded, such defense is not open; and when all the evidence tends to show that the defendant published the libel by writing it on a postal card and mailing it, the Judge below should charge the jury, if they find the evidence to be true, or to be the facts, some damages should be awarded. The defendant having pleaded good faith and lack of actual malice, it is open to him to offer evidence thereof in mitigation of damages.

CLARK, C. J., and WALKER and CONNOR, JJ., concurring.

CIVIL ACTION to recover damages for publication of a libel, tried before *Moore, J.,* and a jury, at April Term, 1907, of YADKIN Superior Court.

At the conclusion of the evidence, upon an intimation from his Honor that he would charge the jury that, if they believed the evidence, the mailing of the postal card declared upon was

qualifiedly privileged; that the burden of showing malice was upon the plaintiff, and that there was no evidence of actual malice, the plaintiff, having duly excepted, submitted to a nonsuit and appealed.

*Holton & Reece* and *Benbow, Hall & Hanes* for plaintiff.
*E. L. Gaither* for defendant.

BROWN, J.   As gathered from the record, the facts upon which the plaintiff bases his right of action are as follows: The plaintiff was the Treasurer of Yadkin County at the time the cause of action arose, having been elected to said office at the regular election on 6 November, 1904.   As such Treasurer he had in his hands, belonging to said county, the sum of $4,139.09 and other moneys in cash, and had the same securely locked in an iron safe in his store in the town of Yadkinville, the county seat of Yadkin County; and on the night of 6 September, 1904, the storehouse in which the said safe was located was broken into and said safe, containing said funds and moneys, was blown open by unknown parties, supposed to be burglars, and robbed of its contents.   On 9 September, 1904, the defendant, J. D. Hodges, wrote a postal card to one A. J. Martin and sent same through the United States mails from some point in Davie County to Longtown post-office, in Yadkin County, the contents of the card being as follows:

"DEAR SIR:—From conversation I have had with a gentleman from Davie County who was in Yadkinville the day after the robbery, I believe the guilty men live in Yadkinville.   Turn your searchlights on your Treasurer and the man that boards with him and the postmaster, and you will find where the money went.        Yours truly,
                                                    "J. D. HODGES,
"September 9, 1904.                          Augusta, N. C."

The defendant was at that date Superintendent of Public Instruction and a resident of Davie County, and the addressee of the postal card, Martin, held the same office in Yadkin County.

1. That the words written upon the postal card are of such a character as makes them actionable *per se* is hardly debatable. They plainly imply the commission of a crime which not only involves moral turpitude and is punishable by imprisonment, which is sufficient to make words actionable *per se,* but, under the law of this State, constitutes a felony, punishable by imprisonment in the State's Prison. Odger Libel and Slander, p. 2, 53-56; *Brayne v. Cooper,* 5 M. & W., 249; *Posnett v. Marble,* 62 Vt., 486, and cases cited.

2. That there was a publication of the libel is proven by the testimony of the addressee, who testifies he received it in the mail, as well as by the testimony of the carrier and others. Communications in the nature of telegrams and postal cards containing defamatory matter, transmitted in the usual manner, are necessarily liable to be communicated to all the clerks through whose hands they pass. Newell on Slander and Libel, p. 233. The exact question was decided by the Supreme Court of Tennessee. In that case a clerk in one bank wrote on a postal card and mailed it to a correspondent bank in reference to a draft held for collection by the former for the latter: "Bowdie in the hands of a notary." The Court held it to be a publication, and that the words, being false, were libellous and actionable *per se,* without proof of special damage. This case is cited with approval by Newell, *supra,* note, p. 233. Besides, it is to be noted that the very method of making this communication adopted by defendant is prohibited by law and made a crime against the United States, for the evident reason of its publicity. While the government may legislate against the reading of postal cards by those through whose hands they pass, it, nevertheless, recognizes the frailty of human nature, and prohibits the mail-

ing of postal cards containing defamatory matter, under severe penalties.  United States Compiled Statutes 1901, Vol. II, p. 2661.

3. The occasion of the publication was neither absolutely nor qualifiedly privileged.  It is contended by the learned counsel for defendant that the occasion was qualifiedly privileged, because the communication concerned a public official of the county of Yadkin and was written in the public interest.  We admit the general proposition that it is the duty of all who witness or have knowledge of the misconduct of any public officer to bring such misconduct to the notice of those whose duty it is to inquire into it, but the complaining party must be careful to apply to some person who has jurisdiction to entertain the complaint, or power to redress the grievance, or some duty to perform, or interest in connection with it.  Newell on Slander and Libel, pp. 504 and 505; *Neyley v. Farrow,* 60 Md., 158; *Lansing v. Carpenter,* 9 Wis., 540; *Hamilton v. Eno,* 81 N. Y., 116.  To illustrate: Words charging a party with theft, spoken in good faith, under a belief of their truth and with probable cause, to a *police officer* employed to detect the robber, are in the nature of a privileged communication.  *Smith v. Kerr,* 1 Edm. N. Y. Select Cases, 190.  So, a letter accusing a school mistress of unchastity, written in good faith to the *school committee,* is privileged, so as to put the burden on plaintiff to show actual malice.  *Bodwell v. Osgood,* 3 Pick. (Mass.), 379.

The Am. and Eng. Ency. states the law as follows: "A communication in regard to the character or conduct of a public official is privileged if addressed to a functionary having the authority to redress grievances or to remove the official from office, and, for the purpose of making such communication, every citizen is regarded as having an interest or duty in the subject-matter.  But a communication addressed to a third person having no such authority is not privileged."  18

Am. and Eng. Ency. (2d Ed.), p. 1040. The author has there collected many adjudications on the subject. In commenting on the subject Mr. Odger says: "But in seeking redress the defendant must be careful to apply to some person who has jurisdiction to entertain the complaint or power to redress the grievance. Statements made to some stranger who has nothing to do with the matter cannot be privileged." Page 222. Newell, p. 475; Folkard Starkie, sec. 294, p. 356. *Bryan v. Collins,* 11 N. Y., p. 150, is a full and instructive case. To the same effect are the rulings of the English courts. *Dickeson v. Hilliard,* 9 Exchequer L. R., 79.

In *Bragg v. Sturt* it was held by the Court of Queen's Bench, in an action for libel, that a letter to the Secretary of State by an inhabitant of a borough, imputing to a person who is town clerk and clerk to the justices of the borough, corruption in office, is not a privileged communication. 593 C. L. Rep., 899. *Lord Denman,* delivering judgment, said: "We are of opinion that the defendant was not exempt from responsibility for that which would otherwise be a libel by reason of its being an application to a competent tribunal for redress, because the Secretary of State has no direct authority in respect to the matter complained of, and was not a competent tribunal to receive the application."

In *Harrison v. Bush,* 5 Ellis & Black (Q. B.), 344, the rule is thus stated: "A communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contained criminatory matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation."

This has been generally approved by judges and text writers since. In *Toogood v. Spyring,* 1 Cr. M. & R. (Ex.), 181, quoted in *Bryan v. Collins, supra,* and commended by

*Folger, J.,* in *Klench v. Colby,* 46 N. Y., 427, and in *Hamilton v. Eno,* 81 N. Y., 116, it is said that the law considered a libellous "publication as malicious unless it is fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs in matters where his interest is concerned."

As privileged communications are exceptions to the general rule which implies malice in a libellous publication and infers some damage, it rests with the party claiming the privilege to show that the case is brought within the exception. In this case the defendant has wholly failed to show such facts and circumstances as will give him the protection of either an absolute or a qualified privilege.

4. The defendant having failed to plead justification, that defense is not open to him, even if he had any evidence to support such a plea. It, therefore, follows that his Honor erred in his intimation. He should have instructed the jury that, if the evidence is believed by them to be true, and the facts found as testified to by the witnesses, the plaintiff is entitled to recover some damages. Of course, upon all the authorities, the defendant having pleaded his good faith and lack of actual malice in mitigation of damages, it is open to him to offer testimony of that character, as well as other competent and pertinent facts tending to mitigate the damage. Damages may be mitigated by showing the general bad character of plaintiff, by showing any circumstances which tend to disprove malice, but do not tend to prove the truth of the charge. In his valuable work on slander and libel, Mr. Newell has published the headnotes of a large number of cases which admirably illustrate how this rule on mitigation of damages has been applied, and what facts and circumstances have been admitted in evidence under it. In actions for libel juries have great latitude in the matter of damages. They may, and sometimes do, award nominal damages only, and then again substantial damage, and in some cases exemplary damages by way of punishment.

In such actions juries are authorized to give such exemplary damages as the circumstances justify when the evidence shows that the publication (as expressed by the Supreme Court of the United States) "was the result of that reckless indifference to the rights of others which is equivalent to the intentional violation of them" (*Railroad v. Arms,* 91 U. S., 489), or "when the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations." *Railroad v. Quigley,* 21 How., 213.

New Trial.

CLARK, C. J., concurring: The act of Congress, 18 June, 1888, ch. 394, sec. 2 (2 U. S. Compiled Statutes, sec. 3894, subsec. 5, p. 2661), provides that "All matter, otherwise mailable by law, upon the envelope or outside cover or wrapper of which, or any postal card upon which, any * * * language of a * * * libellous or defamatory * * * character, or calculated by the terms and manner, * * * and obviously intended to reflect injuriously upon the character or conduct of another, may be written or printed or otherwise impressed or apparent, is hereby declared nonmailable matter; * * * and any person who shall knowingly deposit or cause to be deposited for mailing or delivery" any such matter "shall, for each and every offense, upon conviction thereof, be fined not more than $5,000 or imprisoned at hard labor not more than five years,. or both, at the discretion of the Court." It should seem too clear for argument that, when any act is made indictable and punishable by heavy penalties by the Federal Government, which has sole jurisdiction of any criminality attaching thereto, the defendant cannot be held privileged or *quasi* privileged to commit such act when sued in the State Court.

This act of Congress is a part of the law of the land. No one who violates the criminal law can claim that he is privileged or *quasi* privileged to do so. The defendant's communication was not addressed to one charged with the public

duty of investigating the charge.   Even if it had been, the defendant should have sent it, if through the mail, in a sealed envelope.   Being made openly on a postal card, this was in violation of law, if libellous, and his only defense is to prove that it was true and, therefore, not libellous.

It is not unusual for a Judge to file a concurring opinion giving his reasons, or additional reasons, for assenting to the opinion of the Court; but, of course, no other member of the Court is in any wise responsible for the views expressed in a concurring opinion.

CONNOR, J., concurring:  For the reasons and upon the authorities cited in the opinion of *Mr. Justice Brown,* the Court below was in error in holding that the communication was privileged.   I cannot assent to the suggestion that the Federal statute referred to can be invoked to show malice. I am unable to perceive how, in this Court and in this action, the statute has any bearing upon or connection with the case or its merits.   While, for the purpose of enforcing obedience to public statutes, the courts, of necessity, have always held that every person was presumed to know the law, I cannot think that such presumption can be invoked for any other purpose or in any other jurisdiction than that of the government in whose courts its statutes are being enforced.   The presumption used as a basis for visiting pains and penalties is sufficiently harsh and works sufficient hardship when confined within its legitimate sphere.   To fix upon a person, for an act being litigated in a State Court, a malicious motive by reason of a presumption that he had actual knowledge of the existence and provisions of a Federal statute buried somewhere between the covers of one of three volumes of more than 1,300 pages each, is well calculated to make our jurisprudence a rock of offense and a pitfall of destruction to lawyers no less than laymen.   I venture the suggestion that, except in the public and Federal Court libraries, there are not twenty-five copies of the Revised Statutes in this State of two

million souls.    This statute is not invoked by counsel, and it is no reflection on their learning to suppose that they did not know of its existence.    Of course, when either the State or Federal Government, in its own courts, seeks to enforce its statutes, the presumption has its full and conclusive force; but to "call them in aid" in other courts and in civil actions is not only dangerous to the rights of the citizen, but conducive to jurisdictional conflict between the courts in our dual system of government.    State courts can neither construe nor enforce Federal statutes.    Under proper limitations, and with wise administration, these agencies of proof, based upon long experience, are useful in the trial of causes; but, like "fictions" and other expedients, they should be resorted to only to aid in the ascertainment of truth and the administration of substantial justice.    With the enlightened relaxation of the rules of evidence and the tendency of the courts to permit the jury to hear all relevant testimony, the necessity for resorting to presumption largely disappears.    We should endeavor to so try causes that the very truth of the matter shall be established by evidence and not by arbitrary presumptions.    If, as a matter of fact, this defendant, as is quite certain, knew nothing of the statute sought to be used to his undoing, how is it possible that the *animus* with which he wrote and sent the postal card can be affected by it?    I am strongly inclined to think that, if it had been shown that the money which was stolen from the plaintiff, or any part of it, belonged to the public school fund of Yadkin County, the postal addressed to the Superintendent of Education of that county by defendant, the Superintendent of Davie County, would have come within the principle of the authorities cited in the opinion as a privileged communication.    I think that both defendant and Martin, the addressee, had such relation to the school fund of either county as made it their duty to protect it, and, in good faith, seek its recovery if stolen or lost. I cannot forbear saying that, in my opinion, a postmaster or

mail carrier who reads a postal card is guilty of a gross breach
of duty.    I do not assent to the suggestion that the contents
of postal cards are not as sacred from officious interference as
those of a letter.    As the case goes back for a new trial, I for-
bear saying more.

Walker, J., concurs in opinion of Connor, J.