Scileppi, J.
(dissenting). While I agree that the Board of Higher Education of the City of New York had a qualified privilege to issue the statement involved in this case, I do not agree that they had an absolute privilege. Fnrthermore, it is my opinion that this case is easily distinguishable from Sheridan v. Crisona (14 N Y 2d 108).
The nature and duties of a public executive determine whether absolute privilege may be accorded him (Sheridan v. Crisona, supra; Prosser, Torts [3d ed., 1964], § 109). In Crisona we were dealing with an individual who was a municipal executive, the Borough President of Queens County and a member of the Board of Estimate. Prior to Crisona, it was suggested that absolute privilege should be accorded only to principal executives of Federal and State G-overnments. The Crisona decision did nothing more than extend the privilege to principal executives of municipal governments. In my opinion, a member of the Board of Higher Education of the City of New York cannot be classified as a principal executive of the City of New York. While the Board of Education may be an “ important ” agency of municipal government, it is not a principal agency. To be “ important ” is not sufficient to qualify for the privilege, for I presume that every agency is important in its own way. The privilege exists to lighten the burden of those who are charged with the highest burdens of governments, be it Federal, State *403 or municipal, and it should not be extended to lower echelon officials.'
The relationship of a statement to the official duties and responsibilities of its author is a second criterion for determining the existence of absolute privilege (Cheatum v. Wehle, 5 N Y 2d 585, 593-594). Grisona differs from the present case in this respect also. It will be remembered that the allegedly defamatory statements in Grisona were made in a report from Crisona to the Mayor of the City of New York. This report was also released to the press three months after it was submitted to the Mayor. That report was within the scope of Mr. Crisona’s official duties as Borough President, and it was submitted to the Mayor for the purpose of influencing governmental action and improving governmental service. The subsequent release to the press was also within Mr. Crisona’s official duties since section 893 of the New York City Charter mandated that Mr. Crisona permit the public to inspect documents such as the report.
This is not the case here. The alleged defamatory statement was issued as a press release and directed to the general public for informational purposes. It was not made in an official report nor does it appear that a public statement by the Board of Education was mandated by official duty. Furthermore, the statement did nothing to improve or influence governmental action. This is especially true where, as here, the public presumably could do nothing about the situation. Any necessary governmental action would have been better influenced by a report to a responsible government agency than by an inflammatory press release to the general public.
Lastly, although this case is similar to Barr v. Mateo (360 U. S. 564) and although Barr is cited in Crisona, Barr v. Mateo is not the law in New York. Barr was cited in Crisona not to extend the privilege in New York as far as it had been extended in the Federal courts, but simply to add weight to the arguments for according the privilege to a high municipal executive.
As I stated above, while I do not agree that the Board of Education had absolute privilege, I do agree that they had a qualified privilege. If the statement is qualifiedly privileged, no action will lie unless the statement was motivated by actual malice and was false (Shapiro v. Health Ins. Plan, 7 N Y 2d *404 56). Actual malice may be inferred from the language and tenor of the libelous statement or from the extent or excessiveness of the publication thereof (Hamilton v. Eno, 81 N. Y. 116; Moyle v. Franz, 267 App. Div. 423, affd. 293 N. Y. 842). The plaintiffs’ complaint read in part as follows: “On or about October 11, 1960, defendant[s] * * * falsely, maliciously, and intentionally did cause to be printed and published of and concerning plaintiff [s] * * * the following false and defamatory statement:” This allegation was followed by a recital of the allegedly defamatory press release which is quoted at length on pages 397-398 of the majority’s opinion. The tenor of this press release is unnecessarily harsh, offensive, degrading and was concededly directed at the petitioners. Furthermore, the statement was released for wide-scale publication after a Commissioner, appointed by the State Commission Against Discrimination to investigate charges of anti-Catholic bias at Queens College, had made known to the Board of Higher Education his findings that such discrimination did exist.
Thus, the statement concerning the petitioners, made with full knowledge of these findings which supported the petitioners’ claim of bias, together with the tenor of the language employed in the release and the allegations of malice in the complaint are sufficient to raise a question of fact as to malice. Therefore, the court below properly denied defendant’s motion for summary judgment.
Accordingly, I would reverse the order of the Appellate Division and deny the motion for summary judgment.
Chief Judge DesmoNd and Judges VaN Voorhis, Burke and BergaN concur with Judge Fuld; Judge KeatiNg concurs in a separate memorandum in which Judges VaN Voorhis and Burke concur; Judge Scileppi dissents and votes to reverse in a separate opinion.
Order affirmed.