Titone, J.
(concurring). As do each of the other six members of this Court, I concur in the conclusion that plaintiff has not established an actionable defamation and that, accordingly, its complaint was properly dismissed. I also join in many of the concerns addressed in Judges Simons’s and Hancock’s concurrences about the propriety and wisdom of deciding this appeal on alternative State and Federal constitutional analyses. Judge Simons’s extended discussion of the apparent inconsistency in the majority’s two-part analysis, as well as his review of the jurisprudential considerations militating against the majority’s use of the "dual” approach in this case, are thorough and persuasive, and require no further elaboration here.* Nonetheless, I have chosen to write separately because, *264 in my view, the controlling legal principles should, at least in the first instance, be derived from State, rather than Federal, law.
Even if, as the majority’s opinion suggests, the Supreme Court’s recent decision in Milkovich v Lorain Journal Co. (497 US —, 110 S Ct 2695) has changed the contours of what is actionable under the Federal Constitution (but see, 497 US, at —, 110 S Ct, at 2708-2709, supra [Brennan, J., dissenting]; see also, concurring opns per Simons, J., at 258-259, Hancock, Jr., J., at 268), its over-all significance for our present purposes should not be overestimated. Milkovich and its predecessor Gertz v Robert Welch, Inc. (418 US 323) merely established and shaped the constitutional floor below which State defamation rules may not fall (see, People ex rel. Arcara v Cloud Books, 68 NY2d 553, 557; see also, Kaye, Dual Constitutionalism in Practice and Principle, 61 St John’s L Rev 399, 403). As such, they simply delineated the limitations imposed by the First Amendment on the State-derived common-law rights of defamation plaintiffs. There is nothing in Milkovich or any of the related cases that impairs the States’ power to impose additional limitations, based on either their own Constitutions or the traditions underlying their previously established common-law doctrines (see, e.g., Prune Yard Shopping Center v Robins, 447 US 74).
Thus, our first obligation as a State common-law court is to determine whether the dismissal of this plaintiff’s complaint is consistent with our State’s common-law and constitutional defamation rules. Resolution of this question is, in my view, a necessary and logically prior step that must be taken before any Federal constitutional issue is considered. As one State court has aptly observed: "The proper sequence is to analyze the state’s law, including its constitutional law, before reaching a federal constitutional claim. This is required, not for the sake either of parochialism or of style, but because the state does not deny any right claimed under the federal Constitution when the claim before the court in fact is fully met by state law” (Sterling v Cupp, 290 Ore 611, 614, 625 P2d 123, *265 126, quoted in Massachusetts v Upton, 466 US 727, 736 [Stevens, J., concurring]; accord, State v Badger, 141 Vt 430, 448, 450 A2d 336, 347 ["(fulfillment of this Court’s responsibilities as a member of the federalist system requires us to consider the availability of state grounds before federal appeal”]).
Under our system of federalism, the State courts have both the privilege and the responsibility of enunciating the State’s law and providing the first line of protection for the people’s liberties. "It is also important that state judges do not unnecessarily invite [the Supreme Court] to undertake review of state-court judgments” (Massachusetts v Upton, supra, at 737 [Stevens, J., concurring]).
With these principles in mind, I would decide this case solely by reference to New York State law, specifically its common-law defamation precepts. Indeed, in this State there exists a pre-Gertz body of case law that remains untouched by Milkovich and provides an ample framework for resolving the issue placed before us on this remand.
As this Court observed the first time this case was before it, the roots of the modern, constitutionally based opinion privilege lie in the common-law doctrine according a qualified privilege to "fair comment” (74 NY2d, at 555). This doctrine has existed as part of New York’s common law of defamation, albeit in cramped form, since at least 1840, when a journalist named Stone was sued for his vitriolic denunciation of a book authored by James Fenimore Cooper (Cooper v Stone, 24 Wend 434; see also, Bingham v Gaynor, 203 NY 27; Triggs v Sun Print. & Publ. Assn., 179 NY 144; Hamilton v Eno, 81 NY 116). By 1930, this Court had unequivocally stated that "[e]very one has a right to comment on matters of public interest and concern, provided he does so fairly and with an honest purpose.” (Hoeppner v Dunkirk Print. Co., 254 NY 95, 99.) And, by the latter half of the twentieth century, the "fair comment” doctrine was being applied expansively so as to make New York’s common-law defamation rules consistent with the State and Federal constitutional guarantees of free speech, as well as with the value that society places on the open and free exchange of ideas (see, e.g, Julian v American Business Consultants, 2 NY2d 1; see also, Cole Fisher Rogow, Inc. v Carl Ally, Inc., 25 NY2d 943).
To be sure, when New York Times Co. v Sullivan (376 US 254) and its progeny introduced a constitutional dimension into the law of defamation, judicial attention shifted away *266 from the evolving common-law "fair comment” privilege and, in its stead, a parallel body of constitutional case law premised on the dictum in Gertz v Robert Welch, Inc. (418 US 323, 339-340, supra) was developed (see, e.g., Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369), culminating in our Court’s recent decisions in Steinhilber v Alphonse (68 NY2d 283) and this case (74 NY2d 548, supra). However, now that Gertz has proven to be a false lead, we may, without serious difficulty, retrace our steps and pick up the path where we left it when Gertz was decided. Such a course would lead to essentially the same conclusion that the majority has reached, i.e., that the statements plaintiff challenges are not actionable.
As was true of the line of cases built upon Gertz v Robert Welch, Inc. (supra), the central concern of the "fair comment” cases was to protect both "the right to comment on public affairs” and "the public’s access to important information” (see, Immuno AG. v Moor-Jankowski, 74 NY2d 548, 556, supra). In furtherance of that concern, it is highly appropriate to consider the context, tone and character of a statement challenged as defamatory when determining whether it constitutes a privileged "fair comment” or an actionable assertion of fact. Indeed, our common-law cases have often included references to reading the challenged work "as a whole” and in their proper context (e.g., James v Gannett Co., 40 NY2d 415, 419-420; Julian v American Business Consultants, 2 NY2d 1, 14-15, supra). The majority’s current rationale, which emphasizes "the content of the whole communication, its tone and apparent purpose” (majority opn, at 254), fits easily and neatly within this analytical framework.
The approach I advocate — considering State common-law principles before looking to the State Constitution’s strictures —is particularly apt in this context, where the cause of action and the corresponding rights and duties of the parties are themselves creatures of the common law. In most of our prior decisions holding a State constitutional provision to be more protective of individual liberties than its Federal counterpart, the particular right at issue had no source at all other than constitutional law. In People v Griminger (71 NY2d 635), People v P. J. Video (68 NY2d 296), People v Class (67 NY2d 431) and People v Bigelow (66 NY2d 417), for example, we were called upon to decide the scope of the rights conferred by article I, § 12 of our State Constitution where the only other possible source of the protection was the Fourth Amendment to the Federal Constitution — and that source had been ruled *267 unavailable (cf., People v Johnson, 66 NY2d 398; see also, People ex rel. Arcara v Cloud Books, 68 NY2d 553, supra [constitutional free speech guarantee]; People v Bethea, 67 NY2d 364 [constitutional privilege against self-incrimination]; Sharrock v Dell Buick-Cadillac, 45 NY2d 152 [constitutional due process guarantee]; People v Hobson, 39 NY2d 479 [constitutional right to counsel guarantee]). In such circumstances, there is no choice but to invoke the State Constitution, and we properly did not hesitate to do so.
Here, in contrast, the controversy concerns the scope of, and restrictions upon, private rights whose immediate source is a judicially created common-law cause of action, i.e., defamation. In this context, it seems more than a little anomalous to leap directly to an inquiry into what the State Constitution forbids. Implicit in such an inquiry is the assumption that were it not for the constitutional restraints, the law would permit what is determined to be constitutionally forbidden. While such an approach may be required when the court is called upon to enforce an unambiguous rule established by another branch of government, such as a legislative enactment, it seems out of place when the rule to be enforced is a common-law rule of the courts’ own making. In the latter circumstance, the sounder approach is to simply shape the common-law rule so as to avoid a constitutional clash. Such an approach is particularly appropriate in an area where, as here, the common law has not developed and hardened to the point where a constitutionally compatible rule is foreclosed by clear precedent.
Whether we use common-law principles to "inform” our constitutional analysis (majority opn, at 250) or instead reverse that order of priority as I suggest (see also, People v Conyers, 52 NY2d 454) is not merely a matter of semantics. The approach I suggest has the advantage of being in harmony with the well-established principle that courts should avoid passing upon constitutional questions when the case can be disposed of in another way (e.g., Matter of Beach v Shanley, 62 NY2d 241, 254; People v Felix, 58 NY2d 156, 161). It also avoids a problem I have previously mentioned in connection with constitutionally based decision making, i.e., the practical difficulty of reversing or modifying the rule that the judiciary has adopted (see, Titone, State Constitutional Interpretation: The Search for an Anchor in a Rough Sea, 61 St John’s L Rev 431, 439, and n 39; see also, Maltz, The Dark Side of State Court Activism, 63 Tex L Rev 995, 1000).
*268 In summary, I agree with the majority’s ultimate conclusion that the statements contained in the McGreal letter do not constitute express or implied assertions of fact and are therefore not actionable under our State’s law. That conclusion, for me, ends the inquiry. Accordingly, I vote to affirm the decision below dismissing plaintiff’s complaint.

 Like Judge Hancock, I would not rule out the use of the "dual” *264 approach in cases where the posture makes it necessary or appropriate (see, e.g., People v Dunn, 77 NY2d 19). In this case, however, the approach seems particularly inapt because, as the majority itself admits, its Federal constitutional analysis is inconclusive. Further, to the extent that a tentative conclusion has been reached, the Federal analysis leads to the same conclusion as does the "independent and adequate” State law rationale and, consequently, is unnecessary dictum.