Max Mencher, Plaintiff, *v.* Adolph J. Chesley, Defendant.

Supreme Court, Special Term, Kings County, January 18, 1946.

*Ernest P. Seelman* and *James J. Brown, Jr.*, for defendant.

*Lyman Stansky* for plaintiff.

DALY, J. Two separate motions by the defendant: (1) For a judgment dismissing the complaint pursuant to subdivision 5 of rule 106 of the Rules of Civil Practice, upon the ground that it does not state facts sufficient to constitute a cause of action, and (2) for an order pursuant to rule 103 of the Rules of Civil Practice, striking twenty-six designated paragraphs from the complaint, which contains in all thirty-five paragraphs.

The plaintiff for some time prior to August 22, 1944, has been and still is a public official, viz., the Regional Information Executive of the Office of Price Administration, in charge of the information division of the regional office having jurisdiction of the States of New York, New Jersey, Pennsylvania, Maryland, Delaware and of the District of Columbia. He sues in libel, his grievance being that the defendant published the alleged libelous statement concerning him, which is annexed to the complaint and marked " Exhibit A ".

The defendant had been the chairman of the Ration Board of the Borough of The Bronx and on or about August 22, 1944, composed and published Exhibit A. This is very lengthy, but it must be considered in its entirety to determine the meaning and scope of the parts thereof charged to be offensive.

In this statement the defendant gave his version of certain difficulties which resulted in his removal as chairman of The Bronx Ration Board. He charged that the complaint against him " was filed by a number of units of a political pressure group, a left-wing organization, which claims to represent the consumers of the Bronx ". He referred to the organization of neighborhood panels and stated that a parallel Price Panel " had an odor of politics and seemed pretty chummy with the left-wing group which had been trying to muscle in. It looked ominous, dangerous to the Bronx rationing and price control program * * *."

Next he discussed the activities of " the members of the left-wing units who * * * joined my local price panels as volunteers, but they didn't want to do any work, they just wanted

to run the show, throw picket lines around grocery stores, hold parades, and spread propaganda.'' The paragraph, which is the crux of plaintiff's grievance, is as follows: '' I have never been in politics and am not up on that topic, so I can't figure it all out. Maybe the people can. I hope so, I do know that the publicity department of the Regional Office, which started this controversy and which I believe instigated the attack, is directed by Max Mencher, former Daily Worker employee, wizard public relations and stunt man of the Office of War Information, who is for the time being on the OPA payroll. He was campaign manager for Isidore Nagler, Communist candidate for Bronx Borough President in a recent election. Maybe that will help to add up the score.''

Both sides concede that Exhibit A does not directly charge the plaintiff with membership in the Communist party. The plaintiff contends, however, that a question of fact for a jury is presented whether it is libelous per se to charge '' a federal official, with having political affiliations with, and being ideologically sympathetic to, the Communist Party.'' Counsel for the defendant argues, on the other hand, that '' a person charged with being a Communist should be left to his action for false words maliciously written and to his actually proven damages; that it is clearly non-libelous to accuse a person of having Communist sympathies or having worked on a Communist newspaper or of having run the campaign of a Communist candidate; that so long as Communists are recognized as a legal organized political party and are voted for and elected to office, such charge must fall, unless supported by actual pecuniary loss. Nor should the changing policies of that party from day to day be the chameleon test of the citizen's liability for calling another a Communist.''

The defendant's position finds support in *Garriga v. Richfield* (174 Misc. 315), wherein the plaintiff was charged with being politically affiliated with the Communist party. Mr. Justice PECORA in a comprehensive opinion discussed the historical background of Communism and the Communist party and concluded as follows (p. 320): '' The fact remains, however, that the Communist party, under existing law, may function as a political party. * * * At least *while it possesses that status and those rights, it cannot be held that it is defamatory per se to say of one that he is affiliated with, or a member of, the Communist party,* any more than it would be to say that he is a member of any other legally recognized political party. Any rule to the contrary would abridge that freedom of discussion rela-

tive to parties, principles and personalities in the political arena, which is so vital to the preservation of our democracy. * * * Far better it is to preserve that right unhampered — even with the abuses which frequently attend its exercise in the heat of political passion — than to limit it at the possible loss of our constitutional liberties.'' (Emphasis supplied.)

A different conclusion was subsequently reached by Mr. Justice HOFSTADTER in *Levy* v. *Gelber* (175 Misc. 746). There it was claimed that plaintiff, an attorney, had charged excessive fees and shared them with a layman, and that he was a Nazi and a Communist. The court held that *both* the charge of professional misconduct and that the plaintiff was a Nazi and a Communist were libelous per se. The court said: '' Whatever doubt there may have been in the past as to the opprobrious effect on the ordinary mind of such a charge (*Hays* v. *American Defense Society, Inc.*, 252 N. Y. 266; *Garriga* v. *Richfield*, 174 Misc. 315), recent events and legislation make it manifest that to label an attorney a Communist or a Nazi is to taint him with disrepute. The Selective Training and Service Act of 1940 (§ 8, subd. 1) declares the expressed policy of Congress that vacancies caused by the induction of employees into the army ' shall not be filled by any person who is a member of the Communist Party or the German American Bund.' The Emergency Relief Appropriation Act for 1941 (General and Special Provisions, § 15) has a similar interdiction against the employment of Communists and members of any Nazi Bund organization on any public works project appropriated for in that legislation. Section 12-a of the Civil Service Law bars persons who advocate the overthrow of the government from any civil service position. It is commonly believed that the Communist party holds such a tenet.

'' Certainly, in light of the public attitude today as evidenced, only in small part, by these legislative enactments, it may not be held as a matter of law that to place an attorney falsely in the category of those to whom government employ is forbidden does not adversely affect his standing in his profession.''

On November 2, 1945, the Circuit Court of Appeals of the Second Circuit handed down an opinion by Circuit Judge LEARNED HAND, which held it to be libelous in this State to write of a lawyer that he has acted as an agent of the Communist party and is a believer in its aims and methods. (*Grant* v. *Reader's Digest Ass'n*, 151 F. 2d 733 .) The court concluded its

opinion in that case with the following statement (p. 735): " The lower courts in New York have passed on almost the same question in three cases. In *Garriga* v. *Richfield*, 174 Misc. 315, 20 N. Y. S. 2d 544, PECORA, J., held that it was not libelous to say that a man was a Communist; in the next year in *Levy* v. *Gelber*, 175 Misc. 746, 25 N. Y. S. 2d 148, HOFSTADTER, J., held otherwise. That perhaps left the answer open; but *Boudin* v. *Tishman*, 264 App. Div. 842, 35 N. Y. S. 2d 760, was an unescapable ruling, although no opinion was written. Being the last decision of the state courts, it is conclusive upon us, unless there is a difference between saying that a man is a Communist and saying that he is an agent for the Party or sympathizes with its objects and methods. Any difference is one of degree only: those who take it ill of a lawyer that he was a member of the Party, might no doubt take it less so if he were only what is called a ' fellow-traveler '; but, since the basis for the reproach ordinarily lies in some supposed threat to our institutions, those who fear that threat are not likely to believe that it is limited to party members. Indeed, it is not uncommon for them to feel less concern at avowed propaganda than at what they regard as the insidious spread of the dreaded doctrines by those who only dally and coquette with them, and have not the courage openly to proclaim themselves."

Learned counsel for the defendant argues that in every reported case, where the charge of political affiliation with or ideological sympathy to the Communist party and its principles was held libelous per se, the plaintiff was an attorney; that there is a distinction between a charge made against a member of the learned professions and the " ordinary layman ". (*Sanderson* v. *Caldwell*, 45 N. Y. 398.) But, we are not dealing here with an ordinary layman; the plaintiff is a public official and his reputation is as much at stake as that of an attorney. The law of defamation is concerned with injuries to reputation; if the article tends to expose plaintiff to " public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace ", it is libelous per se (*Kimmerle* v. *New York Evening Journal, Inc.*, 262 N. Y. 99, 102), notwithstanding that it may not impute moral turpitude. (*Katapodis* v. *Brooklyn Spectator, Inc.*, 287 N. Y. 17, 20.)

In *Kaminsky* v. *American Newspapers, Inc.* (258 App. Div., 1078, affd. 283 N. Y. 748), the plaintiff, an attorney and a member of the New York Legislature, recovered damages for the publication of a certain editorial in a newspaper, which charged him with having introduced various bills to repeal what is known

as the " Teachers' Oath Law ". The editorial referred *exclusively to plaintiff's capacity as a public official.* It was entitled " Keep Communism Out of Schools! Teachers' Oath of Loyalty Must Stand! " Plaintiff's bills were described as " obviously designed to PERMIT and to PROTECT Communistic activities in the schools of New York ", and that the origin of these " pernicious bills " can be traced beyond the plaintiff " to certain Communistic groups in New York city ". The plaintiff was then accused of introducing his bills " under the false pretense of protecting ' academic freedom,' to mangle the Education Law of New York in such a way as to destroy any barriers at all against Communistic and seditious activities by teachers." This was followed by the statement, " The Communist drive to take over the schools is SOMETHING MORE than undercover stealthy propaganda." The sufficiency of the complaint was upheld in Special Term upon defendant's motion for judgment on the pleadings (N. Y. L. J., Sept. 23, 1937, p. 793, col. 3). No appeal was taken from this determination. Special Term held: " * * * it cannot be held as a matter of law that it is not susceptible of an interpretation that plaintiff was actuated by a purpose to aid and abet a plot dictated by a foreign government and fostered by subversive elements in this country to mangle the Education Law so as to permit and protect a communist drive to take over the schools, or by other evil motives. The question of whether readers of ordinary and average intelligence would not understand that to be the charge made by the publication of this editorial should be left for a jury to determine * * *."

So in the case at bar, the question whether the defendant's statement, Exhibit A, did not taint plaintiff's standing and reputation as a public official must be left to a jury to decide. The court is unable to hold, as a matter of law, that it did not. The jury by its verdict will reflect the effect of the statement upon the ordinary reader of average intelligence in light of the public attitude today towards Communism and those in political and ideological fellowship with it. As was stated in *Balabanoff* v. *Hearst Consolidated Publications* (294 N. Y. 351, 356): " Whether the false publication * * * in and of itself, is sufficient to bring the plaintiff into disrepute and subject her to * * * hatred and contempt * * * is a matter within the province of the jury, and we are unwilling to say, as a matter of law, that the language used is not libelous per se."

The motion to dismiss the complaint is denied.

The defendant's motion, under rule 103 of the Rules of Civil Practice, is granted as to paragraphs 6, 7, 8, 12, 18, 22, 26, 27, 28, 30, 31, 32 and 34. In all other respects, it is denied (*Zirn* v. *Bradley,* 269 App. Div. 961; *Day* v. *Day,* 95 App. Div. 122).

Settle orders on notice.