JOHN A. DEVANY, JR., Plaintiff, *v.* MICHAEL J. QUILL, Defendant.

Supreme Court, Trial Term, Bronx County, July 10, 1946.

*John J. McNaboe* for plaintiff.

*Harry Sacher* for defendant.

BENVENGA, J. Motion to set aside a verdict for the plaintiff in an action for slander and to dismiss the complaint therein as insufficient in law.

The complaint charges that, at a time when this country was at war with Germany, the defendant called the plaintiff: " The agent of Fascism in America today " and " The agent of Hitler in America "; that these statements were made of the plaintiff " as an individual and as a candidate for public office " (i.e., for Congress); and that, as a result, he was injured and damaged in his good name and reputation. The complaint does not plead an innuendo; nor does it allege nor did the plaintiff prove special damages.

The case was submitted to the jury on the theory that the words spoken were actionable per se, in that they falsely imputed to the plaintiff not only the commission of a crime but also unfitness for public office. In this connection, the jury were instructed that the plaintiff was not entitled to a verdict, unless they found that the defendant intended to charge the plaintiff with crime and the bystanders so understood the imputation, and unless they found that the defendant intended to charge that the plaintiff was unfit for public office and the bystanders so understood the imputation (see *Kegerreis* v. *Van Zile,* 180 App. Div. 414, 417). And there being no proof of special damages, the jury were told that, where the defamatory words are deemed actionable per se, injury and damage are presumed, and that they may award nominal, compensatory or exemplary damages. The jury brought in a verdict for nominal damages.

(1) It is contended that error was committed in submitting the case to the jury on the theory that the words spoken imputed to the plaintiff the commission of a crime. It is argued that, as the complaint did not, by failing to plead an innuendo, specify the crime which the defendant intended to impute to the plaintiff, the complaint was fatally defective.

But the office of an innuendo is merely to construe and explain the meaning of the words spoken and to show that they were used in a defamatory sense. The innuendo cannot change, enlarge, extend or add to the sense in which the words were used, or to impute to them a meaning which they do not warrant or fairly imply. Accordingly, where the spoken words are actionable per se, no innuendo is necessary. Nor is an innuendo necessary where the spoken words clearly impute the commis-

sion of a specific crime. However, where the words used require an allegation to explain their concealed or defamatory meaning, then an innuendo is essential (*Hays* v. *American Defense Society,* 252 N. Y. 266, 269; *Van Heusen* v. *Argenteau,* 194 N. Y. 309, 312; Seelman on Libel and Slander, pp. 692–696). " Whenever the words require an innuendo to explain their meaning, it becomes necessary for the pleader to set forth in the innuendo the crime which the words impute." (Seelman on Libel and Slander, pp. 696–697.)

Here, the spoken words do not require an innuendo. The statement that the plaintiff was " the agent " of Hitler and Fascism in America was an imputation that the plaintiff had acted or had power to act for Hitler and Fascism in America (see Standard Dictionary). That statement is not an innocent or harmless imputation, one that may or may not be wrongful. And while it is not a charge of specific crime, it is a charge of any and all crimes which " the agent " of Hitler or Fascism in this country had committed or which he might be expected to commit as such agent. At least, the jury might, and indeed may, have so found. Such a charge, especially when made while this country was at war with Germany, is actionable per se (*Brewer* v. *Weakley,* 2 Tenn. 99; *Levy* v. *Gelber,* 175 Misc. 746; *Luotto* v. *Field,* 49 N. Y. S. 2d 785, mod. 268 App. Div. 227, which was revd. and order of Special Term affd. 294 N. Y. 460; *Mencher* v. *Chesley,* 186 Misc. 877).

It may be pointed out that, in submitting the issue to the jury, it was left to them to determine, as a question of fact, in accordance with the decision in *Kegerreis* v. *Van Zile* (180 App. Div. 414, *supra*), whether the defendant intended to impute to the plaintiff the commission of a crime; whether the bystanders so understood the words used by the defendant; and whether the crime intended and understood was that of acting as a foreign governmental agent (see U. S. Code, tit. 22, § 601), or a crime prohibited by the Trading with the Enemy Act of 1917 (see U. S. Code, tit. 50, Appendix, §§ 2, 3), or by the Espionage Act (see U. S. Code, tit. 50, §§ 31–40), or treason (see U. S. Const., art. III, § 3).

(2) It is also contended that error was committed in submitting the case to the jury on the theory that the words spoken imputed to the plaintiff unfitness for public office. It is argued that the alleged defamatory statements are not actionable per se, inasmuch as they were spoken of the plaintiff " as a candidate " for public office, and not in relation to any office which he then actually occupied.

But the complaint alleged that the defamatory words were spoken of the plaintiff " as an individual and as a candidate for public office." If, therefore, as pointed out, the words spoken imputed to the plaintiff the commission of a crime, then the words are actionable per se, whether they were spoken of the plaintiff as an individual or as a candidate. For, " One being a candidate for an office * * * does not have the effect to make language concerning him in that character actionable *per se,* otherwise than it would be actionable *per se* if it concerned him as an individual merely," (Townshend on Libel and Slander [4th ed.], § 187, p. 231). " Words which are in themselves actionable, are not the less so from having been applied to a candidate to serve in Parliament." (Starkie on Slander and Libel [1877 ed.], p. 188.)

In any event, defamatory words spoken of a candidate for public office, whether they impute the commission of a crime or not, which will cause persons not to vote for him are actionable per se (*Brewer* v. *Weakley,* 2 Tenn. 99, *supra*) the case upon which the charge in this respect was based.

The cases upon which defendant relies are either not in point or distinguishable. Some of them concern words spoken of a public officer, and hold that the words are not actionable per se, unless they were spoken of the officer in his official capacity, and unless he was a public officer when the words were spoken (*Cassavoy* v. *Pattison,* 93 App. Div. 370, 372, and cases cited). They do not touch upon the question here involved — whether it is actionable per se to make false and defamatory oral statements concerning a candidate for public office. Other cases, more or less in point, hold that it is not actionable per se to impute weakness of understanding to a candidate for public office (*Mayrant* v. *Richardson,* 1 Nott & McCord [S. C.] 347), or to charge him with having accepted a bribe to abandon the contest (*Field* v. *Colson,* 93 Ky. 347). In the former case, the spoken words seem to have been held to constitute fair comment; in the latter, as the court pointed out, " the words charged did not, if true, constitute an indictable offence."

Unfortunately, none of the cases discuss the question here involved. Nevertheless, the *Brewer* case (*supra*), upon which the charge was based, seems to be sound in principle.

Slander, or oral defamation, is divided into words actionable per se and words not actionable without special damage. Where words are actionable per se, an action will lie for speaking them without proof of actual injury, " because their necessary or natural and proximate consequence would be to cause injury to

the person of whom they are spoken, and therefore injury is to be presumed." (Cooley on Torts [1930 ed.], § 159, p. 325.) Included in this class are: (1) " Words falsely spoken of a person which impute to the party the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished"; and (2) " Defamatory words falsely spoken of a person, which impute to the party unfitness to perform the duties of an office or employment of profit, or the want of integrity in the discharge of the duties of such an office or employment." (*Pollard* v. *Lyon*, 91 U. S. 225, 226; *Moore* v. *Francis*, 121 N. Y. 199, 203.)

In the class of words not actionable without special damage, however, an action will not lie without proof of damage, because injury is not inferred or presumed. This class of cases embraces " all those in which the untruthful statement is not deemed in law to be necessarily of a damaging character, but which can be and is shown to have been damaging in the particular case, by reason of special circumstances which are set out in the declaration." (Cooley on Torts, § 164, p. 338.)

To hold that, in wartime, it is not slander per se falsely to accuse a candidate for public office of being " the agent " of an enemy country is to assert that such a charge is harmless and that its natural and necessary tendency is not to injure or damage the candidate in his good name and reputation. Such a ruling would seem to be utterly unsound and unrealistic.

If it is slander per se to charge a public officer with adherence to principles in conflict with his official duty, as, for example, with disloyalty to the government under which he holds office (Cooley on Torts, p. 334, citing *How* v. *Prin*, Holt K.B. 653), then it is, or should be, actionable per se falsely to accuse a candidate for public office of disloyalty or of being an agent of an enemy country.'

So, if it is libel per se, in the sense that no actual damage need be proved, to write or print of a person that he is a Nazi, a Fascist, or a Communist (*Levy* v. *Gelber*, 175 Misc. 746, *supra;* *Luotto* v. *Field*, 49 N. Y. S. 2d 785, *supra; Mencher* v. *Chesley*, 186 Misc. 877, *supra*); or that he is " a dangerous, able, and seditious agitator ", or other words charging sedition or disloyalty (*Wilkes* v. *Shields*, 62 Minn. 426; *Van Lonkhuyzen* v. *Daily News Co.*, 195 Mich. 283); or, in wartime, that he is a " slacker " (*Choctaw Coal & Mining Co.* v. *Lillich*, 204 Ala. 533); or a " profiteer " (*Lunn* v. *Littauer*, 187 App. Div. 808), then it is, or should be, slander per se falsely to make the same or

similar charges against a candidate for public office, or falsely to charge that he is the agent of an enemy country.

Why written defamation of a candidate for public office should be deemed libel per se and oral defamation should not be regarded as slander per se is not easy to perceive. The natural and necessary tendency of the defamatory imputation to injure is the same in both cases. The fact of the matter is that " This anomalous and unique distinction " is " a survival of historical exigencies in the development of the common law jurisdiction ", and that it " ' rests upon no solid foundation ' " (Restatement, Torts, § 568). The rule was settled in England in 1812 by the decision of the Exchequer Chamber in *Thorley* v. *Lord Kerry* (4 Taunt. 355), on the ground that the doctrine, " though indefensible in principle, was too well established to be repudiated " (8 Holdsworth on History of English Law, 365; Prosser on Torts, § 92, pp. 794, 808–809). In Louisiana, the distinction has been rejected; and all oral defamation is actionable without proof of special damage, on the same principles as written defamation (36 C. J., Libel and Slander, § 29, p. 1166; Prosser on Torts, 808–809).

The distinction, therefore, assuming that it still exists in this State, should not be extended so as to exclude from the category of words actionable per se, defamation of a candidate for public office, especially since the strict rule of common-law liability for oral defamation in respect to a party's office or calling has been relaxed (see Cooley on Torts, § 162, p. 333).

To be sure, as defendant argues, when one becomes a candidate for public office, he makes proffer of himself for public investigation and discussion. Everyone has a right to inquire into his character, his habits, and his qualifications and fitness for office; and everyone has a right to judge and give his opinion and make comments thereon. Nevertheless, the candidate does not surrender his private character to the public, and he has the same remedy for defamation, oral as well as written, as a private citizen (*Hamilton* v. *Eno*, 81 N. Y. 116; *Cortright* v. *Anderson*, 208 App. Div. 1).

The defamation of a candidate for public office is a serious offense; it is a wrong not only against the individual slandered, but against the community itself, " because the people may be deceived, and reject the best citizens, to their great injury, and it may be to the loss of their liberties." (*Commonwealth* v. *Clap*, 4 Mass. 163, 170.)

The motion is denied.